UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:23-cr-80064-RS

UNITED STATES OF AMERICA

V.

FRANK STANZIONE,

    Defendant.

_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DIMISS INDICTMENT**

    The United States, through counsel, hereby respectfully submits the following response in opposition to the Defendant's Motion to Dismiss Indictment. The Defendant argues that the Indictment should be dismissed because he has been selectively prosecuted due to his exercise of political speech related to gay rights. For the reasons set forth in more detail below, this Court should deny the Motion because: (1) the Defendant's motion fails to make a showing that he was singled out for prosecution while other similarly situated individuals who committed the same acts were not prosecuted, and (2) the Defendant's motion fails to show that constitutionally impermissible motives undergird the prosecution of this case.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    On January 29, 2023, at approximately 10:24 p.m. Eastern Time, an anonymous caller left a voice message on the telephone line for the office of United States Representative George Santos. A transcription of the voice message is:

> George Santos you fat fucking piece of shit f*****. You better watch your mother fucking back because I'm gonna bash your mother fucking f***** head in with a bat until your brains are splattered across the fucking wall. You lying, disgusting, disgraceful, motherfucking f*****. You mother fucking piece of shit. You're gonna

get fucking murdered you goddamn lying piece of garbage. Watch your back you fat, ugly, piece of shit. You and your husband are dead.

The voice message was reported to the United States Capitol Police (USCP) the next morning by Representative Santos' chief of staff.  The USCP began investigating the voice message as a threat and ascertained that it was made from a phone number assigned to the defendant, Frank Stanzione.

On January 31, 2023, USCP Special Agents went to the address associated with the telephone number and interviewed the defendant.  When interviewed, Stanzione admitted to making the threat and that he had searched for the phone number through an online search engine. At that point, the USCP was concerned with determining how likely it was that Stanzione would follow through with the threat and asked him about his intentions, travel plans, and whether he had made similar calls to other Members of Congress.  Stanzione stated that he had made calls to two other Republican Representatives, but indicated that he had not threatened them.  Specifically, he stated, "I've never threatened to hurt anyone until Sunday night" (referencing the threat to Representative Santos).

On April 4, 2023, the Defendant was indicted by a Grand Jury sitting in the Southern District of Florida with making an interstate communication that contained a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

The Defendant was arrested and arraigned on April 5, 2023.  Trial in this matter is scheduled for July 31, 2023.

II.     **ARGUMENT**

One of the few constraints imposed upon a prosecutor's broad discretion in bringing charges against an accused is the equal protection component of the Due Process Clause of the Fifth Amendment, which mandates that the decision to prosecute a particular criminal case not be

based upon an "unjustifiable" factor such as race, religion, or another arbitrary classification. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Federal criminal charging decisions, however, enjoy a presumption of regularity. *Id.* at 464-65. Thus, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

In *Wayte v. United States,* 470 U.S. 598, 608 (1985), and later in *Armstrong*, 517 U.S. at 465, the Supreme Court discussed why courts are "properly hesitant to examine the decision whether to prosecute." This deference is driven in part by the fact that certain factors, such as the strength of the case, the general deterrence value, the government's enforcement priorities and the case's relationship to an overall enforcement plan, are not "readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* In addition, the courts want to avoid unnecessarily impairing the operation of a core executive function. "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* at 607.

The Eleventh Circuit explains that "[t]o show selective prosecution, each petitioner has the "heavy burden" of meeting two requirements. First, he must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. Second, having satisfied the initial burden, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. The invidiousness requirement is met if the defendant establishes that the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious

3

discrimination or his exercise of constitutional rights." *Jones v. White*, 992 F.2d 1548, 1571-72 (11th Cir.1993) (citation and internal quotation marks omitted.)

      a.      **The Defendant has failed to make a showing that he was singled out for prosecution and that other similarly situated individuals who committed the same acts were not prosecuted.**

As the Eleventh Circuit explained in *United States v. Smith*, 231 F.3d 800 (11th Cir. 2000), "we define a 'similarly situated' person for selective prosecution purposes as one who engaged in the **same type of conduct**, which means that the comparator committed the same basic crime in **substantially the same manner** as the defendant—so that any prosecution of that individual would have the **same deterrence value** and would be **related in the same way** to the Government's enforcement priorities and enforcement plan—and **against whom the evidence was as strong or stronger** than that against the defendant" (emphasis added). *Id.* at 810. The Eleventh Circuit reiterated this point in 2011 in the case of *United States v. Jordan*, 635 F. 3d 1181 (11th Cir. 2011).

"In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465. The Eleventh Circuit has interpreted the Supreme Court's "clear evidence" standard as requiring the defendant to produce "clear and convincing" evidence. *Smith*, 231 F.3d at 808. To discharge this formidable burden, "a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*., (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). The defendant fails to satisfy either prong of this test.

The defendant attempts to use raw data of "threats" received or investigated by the USCP and anecdotes from news media to ascertain the universe of "similarly situated" persons. In support of his claim that the USCP's Threat Assessment Section "investigated 7,501 threats against

members of Congress in 2022," the Defense motion cites to the USCP Threat Assessment website.[1] Doc. XX at YY.  However, that website specifically states that the number the Defense quotes "includes investigations into concerning statements and direct threats." *Id*.  As such, this number is not relevant for the type of statistical analysis on true threats that the Defense attempts to perform.

For a vast majority of these cases, there is no mention by the defendant of the method by which these persons threatened Members of Congress, whether their communications actually meet the legal definition of true threats, whether they threatened injury or death, the particularity of the threat, the tone or context of the threat, whether the threats were conditional, the strength of the evidence against them, or, indeed, how many of these individuals were even identified.

Even for those individuals which the defendant identifies by name, the defendant does not evaluate all of the individual characteristics that must be considered when determining if prosecution is proper in a particular case.  For example, the United States must consider, *inter alia*, the specificity of the threat, the reaction of the recipients, the conditionality of the threat, the political nature of the threat, and the subjective intent of the person making the threat.  *See Counterman v. Colorado,* 2023 WL 4187751.

Additionally, the Defense makes the claim that "[t]he Department of Justice appears to issue press releases when they arrest and prosecute threats to members of Congress." Doc. 14 at 7.  Although this certainly may occur at times, there is no evidence that a press release is issued in every such case.  In fact, the Justice Manual, at subsection 9-65.140 – Publicity Concerning Threats Against Government Officials,[2] specifically warns of the danger that publicity regarding threats

---

[1] https://www.uscp.gov/media-center/press-releases/uscp-threat-assessment-cases-2022 (last accessed July 13, 2023).
[2] https://www.justice.gov/jm/jm-9-65000-protection-government-officials#9-65-140 (last visited July 13, 2023)

against the President and other Secret Service protectees "seems to generate further criminal activity." While this subsection does not specifically discuss Members of Congress, the same danger exists in cases in which they are the victims of threats.

The Supreme Court has warned against reliance on the type of statistics used by Defendant. In 2002, the Court explained that "[e]ven assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants" *United States v. Bass*, 536 U.S. 862, 863–64 (2002) (italics in original).

After making its statistical argument, the Defense then lists multiple individuals who were charged under this same statute with committing this same crime which demonstrates that Stanzione was not singled out for prosecution.

As to the Eleventh Circuit's consideration of the relative strength of evidence in different cases, the evidence against the defendant in this case is strong. He threatened to kill Congressman Santos on a telephone voice message that was recorded. This recording will be available at trial, and as such, the Government will not need to rely on the testimony of a person who heard threatening language and that witness' ability to recall it from memory and quote it precisely. The response of the Congressman's staff and the United States Capitol Police was swift. Capitol Police Special Agents began interviewing Stanzione in Florida less than 36 hours after he made the threat. This interview was recorded. When interviewed, Stanzione admitted to making the threat, and referred to it as a threat, rather than a political statement, stating "I've never threatened to hurt anyone until Sunday night" (in reference to the night he left the voice message at issue) and "I don't usually threaten people, but I just think he's a piece of shit."

  **b.**  **The Defendant has not shown that Constitutionally impermissible motives undergird the prosecution of this case.**

With respect to the second prong, the Defendant has failed to adduce any evidence that improper motives initiated this prosecution.

Stanzione instead intimates that the government failed to prosecute certain reports of threats but chose to prosecute his true threat here because he espouses political views that the government disfavors. Doc. 14, at 2 ("The Defendant alleges that his prosecution in this case for allegedly violating 18 U.S.C. § 875(c), is based upon his exercise of political speech related to gay-rights, and is retaliatory and vindictive."). Stanzione presents no evidence linking any other case to a different or opposing particular political viewpoint. Additionally, Stanzione's threat did not include any reference to his political stance in support of gay rights, quite to the contrary, he used a slur with respect to Congressman Santos' sexual orientation as a gay man—"George Santos you fat fucking piece of shit f*****. You better watch your mother fucking back because I'm gonna bash your mother fucking f***** head in with a bat until your brains are splattered across the fucking wall. You lying, disgusting, disgraceful, motherfucking f*****. You mother fucking piece of shit. You're gonna get fucking murdered you goddamn lying piece of garbage. Watch your back you fat, ugly, piece of shit. You and your husband are dead." *See* Doc. 1).

As the Defense states in its motion (Doc. 14 at 4), when interviewed and asked why he made the threat, Stanzione stated that he wanted to make Representative Santos "feel like shit." There is no colorable link between this motivation and political speech. He is not advocating for the election of a political candidate, nor is he attempting to gain public support for a political issue. Even if there were some link between his true threat and a political viewpoint, a true threat motivated by political views is still a true threat.

Stripped to its core, Stanzione relies on rank conjecture in suggesting that political favoritism has guided the government's charging and plea decisions. That is not enough; "a defendant must provide something more than mere speculation or 'personal conclusions'" of selective prosecution. *Stone*, 394 F. Supp. 3d at 31 (quoting *Armstrong*, 517 U.S. at 470).

This case is easily distinguishable from *Watts v. United States*, 394 U.S. 705 (1975), cited by the Defense. In that case, Watts' statement, made at a political rally, that ". . . If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. . ." was properly considered protected political speech based not only on the context in which it was given, but also based on the stated conditionality of the statement. *Id*, at 708 ("We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.' Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.") In addition, Watts' statement described a desire ("the first man I *want* to get in my sights is L.B.J.") rather than a threat of action ("I'm *gonna* bash your mother fucking f***** head in with a bat until your brains are splattered across the fucking wall) (emphasis added). Courts must distinguish mere "political hyperbole" from a true threat. *Id.* at 708. A "true threat" is "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

The Eleventh Circuit Pattern Jury Instructions from 2016 require that for the United States to prove that a defendant made a true threat, the government must prove beyond a reasonable doubt that the defendant:

1. knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and

8

      2.      sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

(11th Cir. Pattern Jury Instruction O30.3).

A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person. *Id.*

However, in June of 2023, in the case of *Counterman v. Colorado*, 2023 WL 4187751, the Supreme Court clarified that the proper *mens rea* standard in true threats cases is recklessness, not the much higher standard of knowledge. *Id.* at 2 ("True threats of violence are outside the bounds of First Amendment protection and punishable as crimes. . . . The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another.")

In *United States v. Baker*, 514 F.Supp.3d 1369 (N.D.Fl. 2021), the District Court in the Northern District of Florida stated that the comingling of threats with political speech does not shield a defendant from culpability under the statute criminalizing interstate communications of a threat. *Id.* at 1381. Under the First Amendment, amalgamating true threats with political commentary does not immunize the former. *Id.*

In *Baker*, the defendant made numerous online statements relative to a political event he created on Facebook on January 12, 2021, entitled "Defend Tallahassee." In the details section of the post, the defendant allegedly wrote that "we will circle the state Capitol and let them fight the

cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber …" *Id.* at 1377.

On January 14, 2021, in a comment to an article posted on the internet, Baker posted a "CALL TO ARMS JANUARY 20TH!" At the top of the posting was an image of what appeared to be an AK-47 assault rifle. The rest of Baker's message stated: !

> Armed racists have planted the confederate flag in America's Capitol as they openly declared that they WILL CONTINUE to wage an ARMED COUP at every American Capitol, including Tallahassee, on Inauguration Day.
>
> We need ALL FLORIDA RESIDENTS to RISE UP! Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE!
>
> Tally residents have answered the call to arms, including combat veterans. Join us! Help protect your community from terrorists. We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.
>
> This is an armed COUP and can only be stopped by an armed community!

*Id.* at 1377.

! Although the threats were made in the context of political discourse, the District Court recognized that a reasonable person would understand that the defendant's communications were true threats. Baker spoke about the use of force to commit acts of violence, kidnapping, and attempted kidnapping ("[W]e will encircle them and trap them inside"). He spoke about the use of a firearm ("We will drive them out of Tallahassee with every caliber available"). He also threatened the use of an angry mob intent on "driving" "the enemy" from an area. The court held that a reasonable person could understand these statements, and many others like them used by the defendant in the context of his political rhetoric, to be serious expressions of an intent to commit acts of unlawful violence. *Id.* at 1378-82.

10

The *Baker* Court also recognized that the FBI perceived the defendant's messages to constitute a real threat of violence. The FBI sought a warrant to arrest the Defendant the same day that he transmitted his January 14th communication and a mere two days after his January 12th communication. Although the government's understanding of a message cannot be a court's sole basis for concluding that a message constitutes a threat—that would be an abdication of the court's duty to determine probable cause independent of the executive branch—it is one relevant factor in the probable cause analysis. *Id.* at 1380-81.

The Court also rejected Baker's claim that his statements constituted hyperbolic speech protected by the First Amendment. "To the extent that the Defendant argues that the political nature of his speech insulates his threats from prosecution, even when a threat accompanies pure political speech, this comingling of threats with political speech 'does not shield a defendant from culpability.'" *Id.* at 6, citing *United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999); *United States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983). "Although there are political overtones to Defendant's messages, he explicitly included true threats within his diatribe. That is sufficient to bring the Defendant's messages within the zone of threatening that Congress lawfully may prohibit and punish." *Id.*

The government does not have to prove that the Defendant intended to carry out the threat. Eleventh Circuit Pattern Jury Instruction, Offense Instruction #30.3 (2016 Edition).

Finally, the Defense's extensive, but far from exhaustive list of cases involving those who took part in the events on Capitol Hill on January 6th, 2021, is irrelevant as those cases deal with different statutes used to charge very different acts than the conduct at issue in this case.

III. **CONCLUSION**

For the reasons set forth above, this Court should deny the Defendant's Motion.

Respectfully Submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY:   *s/Joseph H. Wheeler III*
Joseph H. Wheeler III
Special Assistant United States Attorney
Court Id. No A5503046
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Tel: (813) 274-6152
Joseph.Wheeler2@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 17, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*s/Joseph H. Wheeler III*
Joseph H. Wheeler III
Special Assistant United States Attorney