UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80064-CR-SMITH/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FRANK STANZIONE,

    Defendant.

_____/

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS INDICTMENT FOR SELECTIVE PROSECUTION

The Defendant, Frank Stanzione, through counsel and pursuant to the First Amendment and Federal Rule of Criminal Procedure 12(b)(3)(A), files the following reply to the government's response [DE:16] to his previously filed motion to dismiss the indictment in this case as a matter of law. In reply thereof, the Defendant states the following:

1) **The Defendant made the required initial showing that he has been singled out and treated differently from all others with similar conduct:**

This Court has the authority and may intercede in a prosecution in a set of "narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution. *United States v. Smith,* 231 F.3d 800, 807 (11th Cir. 2000). The Defendant alleges that the prosecution in this case is selective, and is based upon his exercise of political speech related to gay-rights.

*See Hartman v. Moore,* 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]"). To meet his burden to prove that this prosecution is impermissibly selective, as alleged in this motion, the Defendant must show two things: (i) Others who have committed the same alleged acts have not been prosecuted for those acts; and (ii) That the Defendant was prosecuted in this matter predicated on a constitutionally inappropriate motivation (such as the exercise of a constitutionally protected right)**.** *See United States v. Gordon,* 817 F.2d 1538, 1539 (11th Cir. 1987). The government contends that the Defendant has failed to meet his initial (step 1) burden in this case of showing that other similarly situated persons who committed the same acts were not prosecuted. [DE:16]. The government's contention ignores all the data that is available which was provided in the Defendant's motion and which proves otherwise.

In his initial motion, the Defendant undertakes the difficult task of identifying all cases that involve similar conduct. This task is difficult because there is no database which lists every such case, thus this information must be gleaned from other available sources. The logical starting point for this undertaking is the data released by the law enforcement agency charged with responding, investigating, and seeking arrest of all those who commit acts similar to the Defendant's, namely—an alleged threat to a congressperson. Towards that end, the Defendant was able to identify the exact number of cases investigated for alleged threats to members of Congress by year and to provide the only two examples that agency provides to the

public of a response log for such calls. That response log indicates a voicemail threat to a Congressperson's office that was responded to, as is the accusation in this case. It is further understood that there is some internal line used by the Department of Justice in such cases regarding which cases to pursue for prosecution, and in such prosecutions, whether to charge a felony or a misdemeanor.[1] In their response, the government chooses not to share this information that guides these choices. Ultimately, not all investigations result in prosecutions.

Nonetheless, the standard from *Gordon* mandates that the Defendant make a showing he has been treated differently than other with similar conduct. As a first step towards this burden, the Defendant has shown that he is already in an **extreme minority** of cases that transition from a TAS threat investigation, to prosecution. Once more, this is a difficult determination to make because there is no list of Department of Justice prosecutions of these cases. As such, the Defendant made a second showing using the Sentencing Guideline section for cases that charge 18 U.S.C. § 875(c) violations to reveal that this is a miniscule number when compared to the number of TAS investigations of these exact cases. This information further strengthens the conclusion that an extreme minority of threats to Congresspersons reported to TAS are resulting in federal prosecutions. With that exceptionally small number of cases established, a lexis search (as is used by the Princeton institute study

---

[1] The Department of Justice was sued in 2022 to release data collected by its election threats task force that it was otherwise refusing to disclose. https://www.reuters.com/legal/government/us-justice-dept-sued-disclose-records-threats-election-workers-2022-08-25/ (last accessed July 18, 2023).

identified in the Defendant's motion) was undertaken to attempt to find these cases that resulted in prosecution. Many of the cases identified by the Defendant did not stem from Justice Department press releases, but from Lexis news searches for press articles about them.

The government ignores this list of cases in their reply. The government, in their reply, does not identify *a single case where a person who has threatened a Congressperson was charged as is in this case*. This initial showing is, however, the Defendant's burden. **The Defendant identified seemingly every case nationally that has been prosecuted for a threat against Congress.**[2] The Defendant included information from the cases listed. In every case there is one of two critical differences in prosecution: either (1) the government charged the case only after multiple threats were received; and/or (2) charged the case as a misdemeanor violation of 18 U.S.C. § 115(a)(1)(B) (or charged this misdemeanor along with the felony violation charged in this case). The Defendant revealed from these similar cases (which are the only similar cases that have resulted in prosecutions) that in every similar situation the offender was treated differently from the Defendant in this case. In all 8 cases from 2022, the Defendant revealed that every person charged with similar conduct was treated differently from the Defendant. The Defendant pointed out the differences, to wit: that the offender was prosecuted for multiple threats and/or as a misdemeanor instead of a felony.

---

2 As best the Defendant can ascertain, this list appears to be exhaustive. The government, in response, neither adds or subtracts from the lists provided.

The Defendant provided evidence that only one other person has been prosecuted for a single alleged threat to Congress, and that person (Allan Poller) has also been charged for a misdemeanor for a nearly identical alleged threat. In response, the government does not address any of these other cases, nor addresses why they were charged less seriously than the Defendant for the same (or worse) alleged conduct. The government simply ignored this information and did not address these differences at all.[3] The Defendant has made the required showing that he is actually being treated differently than all similarly situated offenders in this case.[4]

### 2) **The Defendant has revealed Constitutionally impermissible motives for this prosecution:**

Having met this initial burden of showing he is being treated differently than all similarly situated offenders, the Defendant must next make a showing that the Defendant was prosecuted in this matter predicated on a constitutionally inappropriate motivation (such as the exercise of a constitutionally protected right). *See Gordon,* 817 F.2d at 1539. The government contends that "the Defendant has failed to adduce any evidence that improper motives initiated this prosecution." [DE:16]. The term "adduce" used by the government in response means to "cite evidence." https://www.google.com/search?client=firefox-b-1-d&q=adduced (last

---

[3] The Defendant previously sought a misdemeanor outcome in this instance, which the government denied, thus raising this motion as to why he was being treated differently than Poller and other similarly (or worse) situated offenders.
[4] In addition, the Defendant showed the strange *lack* of prosecution of person's who appear to have communicated similar "threats" and whose identities are known to the government.

accessed July 18, 2023). The government is surely aware that it is actually impossible to cite evidence as to either the mind of the charging prosecutor, or the internal communications of the Department of Justice that preceded this prosecution. The government is also aware that the Courts have determined that a Defendant may not request or obtain discovery materials in support of this motion related to such communications or thought. *See United States v. Armstrong,* 517 U.S. 456 (1996). As in all such instances where a Court reviews a claim of impermissible motive based on a Constitutional factor, the Court, and parties, are left to merely the evidence externally available.

This variety of difficulties (meeting the burden of proof to show requisite prosecutorial intent) is not something new for a Court or Defendant to deal with. In *Flowers v. Mississippi,* 139 S.Ct. 2228 (2019), the Court discussed the history of challenges by defendants to jury strikes based on impermissible constitutional bases by prosecutors:

> First, the *Batson* Court rejected Swain's insistence that a defendant demonstrate a history of racially discriminatory strikes in order to make out a claim of race discrimination. …. According to the *Batson* Court, defendants had run into "practical difficulties" in trying to prove that a State had systematically "exercised peremptory challenges to exclude blacks from the jury on account of race." ….The *Batson* Court explained that, in some jurisdictions, requiring a defendant to "investigate, over a number of cases, the race of persons tried in the particular jurisdiction, the racial composition of the venire and petit jury, and the manner in which both parties exercised their peremptory challenges" posed an "insurmountable" burden.

*Flowers,* 139 S.Ct. at 2241 (internal citations omitted). Facing the obvious problem in *Batson* situations regarding the unstated, actual reason for the strike of a juror, that Court discussed how a Court could seek to determine actual intent by the prosecutor:

> what factors does the trial judge consider in evaluating whether racial discrimination occurred? Our precedents allow criminal defendants raising Batson challenges to present a variety of evidence to support a claim that a prosecutor's peremptory strikes were made on the basis of race. For example, defendants may present:
> • statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;
> • evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case;
> • side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case;
> • a prosecutor's misrepresentations of the record when defending the strikes during the Batson hearing;
> • relevant history of the State's peremptory strikes in past cases; or
> • other relevant circumstances that bear upon the issue of racial discrimination.

*Flowers,* 139 S.Ct. at 2243 (internal citations omitted). As in the case of selective prosecution, "[t]he ultimate inquiry is whether the State was "motivated in substantial part by discriminatory intent." *Id.* at 2244, *quoting Foster v, Chatman*, 136 S.Ct. 1737, 1754 (2016) (internal quotation marks omitted). Much like the Court in *Flowers,* determining the impermissible intent in this instance also mandates looking to these factors (absent knowledge of internal communications by the Justice Department).

As in the Constitutional inquiry done in *Flowers,* the Court must begin an examination of motivation using the statistics. These statistics (as stated in the Defendant's motion to dismiss) reveal the lack of prosecutions under 18 U.S.C. § 875(c) for threats against Congress. The statistics reveal these prosecutions are exceptionally rare. The history reveals that in the few prosecutions for threats against members of Congress, only two cases can be identified that were charged under § 875(c) for a single alleged threat. All others involved multiple alleged threats. Any other single alleged threat cases were charged as less serious misdemeanor offenses. Thus, the history reveals disparate treatment within the § 875(c) cases. A side-by-side comparison was effectuated in the Defendant's motion to dismiss, revealing the facts of the cases prosecuted, and how they were treated, along with facts from cases with known identity of offenders that were not prosecuted. The only two cases identified as single alleged threat prosecutions charged as § 875(c) felony violations both involved offenders who are gay. There is no evidence of single alleged threat cases charged as a violation § 875(c) involving heterosexual offenders. To the contrary, heterosexual offender David Hannon, in a single threat to Congress case, was prosecuted for only a misdemeanor for strikingly similar messaging. Norman LeBoon was also a single threat case by a heterosexual against a member of Congress that was prosecuted only for a misdemeanor. Kenneth Gaspar was a single threat case against a Congressperson who was never prosecuted federally. Instead, Gaspar was only charged with assault in the state courts of New York. Finally, in their response, the government offers no reasons to the Court for this disparate treatment

in: the Defendant being prosecuted for conduct that others, identified in the Defendant's motion, were not prosecuted for; or, the Defendant being prosecuted for a single alleged threat as a felony rather than a misdemeanor like all others in single alleged threat cases. Instead, the government argues that the Defendant's speech was not constitutionally protected.

The problem with the government's response as to the nature of the speech, is that the government obviously did not maintain that the speech in any of the other cases cited wherein an offender was prosecuted for the same type of speech was protected, yet still treated the offender differently. The government must (to avoid dismissal) have maintained that David Hannon's speech was not protected, yet he was prosecuted for a misdemeanor. The government maintained the speech of Norman LeBoon was not protected, yet prosecuted him for a misdemeanor. The same is true in the prosecution of Kenneth Gaspar, who was not prosecuted by the Department of Justice at all. Jonathan Reeser's message to Congressman Swalwell:

> I HOPE YOU FAMILY IS RAPED AND MURDERED AND I HOPE YOU GET TIED TO THE BACK OF A TRUCK AND DRUG 10,000 MILES UNTIL YOU BODY IS RIPPED TO PIECES YOU SCUM. I WISH I SAW YOU IN PERSON ID BREAK YOUR (explicit) FACE SO FAST YOUD HAVE PLASTIC SURGERY AND NEVER LOOK THE SAME AGAIN.

The message is strikingly similar to the voicemail left in this case, yet he has never been arrested or charged. Was this deemed "protected speech?" Is the language to a rally calling on them to, "lightly threaten" their members of Congress and tell them "everybody is coming after you," protected speech and not incitement? Bruce Miller

was never prosecuted for telling a member of Congress: "Almost time!!! Would you rather Guantanamo or just execution f—kin traitor,'" along with three cry-laughing emoji." Miller engaged in further dialogue with Congressman Swalwell, following up that, "that punishment is in the cards for you and many others!" Was this protected speech threatening to execute the member of Congress in a private message? In all of the cases noted, the message "is not advocating for the election of a political candidate, nor …. attempting to gain public support for a political issue," [DE:16] which the government claims in response was the divining line to non-protected speech in this case. What motive does the government ascribe to the animation involving the execution of a member of Congress by Representative Gosar that fits within that definition? Surely, Mr. Miller's threat of execution to Congressman Swalwell was not to make him feel good. The same is true in Mr. Reeser's case. Yet, the government notes in response that the Defendant's perceived motive of making Congressman Santos feel like "shit," is in some way a deciding factor.[5]

---

5 The U.S. Attorney's Office for the Southern District of Florida internal delineation for determining what constitutes a felonious "real threat" lacks consistency with other federal prosecutor's offices. For instance, the Southern District of Florida prosecuted and convicted Suzanne Kaye of an §875(c) violation for posting on Facebook and two other social media platforms: ""ANGRY Patriot Hippie" which revealed KAYE uploaded a video on January 31, 2021, at 10:38 pm captioned, "Fuck the FBI!!" In this video, KAYE announced that she received a telephone call from the FBI asking about her travel to Washington D.C. KAYE then told her audience in the that she will not talk to the FBI without counsel, and that she will exercise "my second amendment right to shoot your fucking ass if you come here," implying that she will use violence against FBI Agents if they come to her residence." *United States v. Kaye,* 21-80039-CR-RLR [DE:3]. After being convicted by a jury for her posts, the government sought and obtained a sentence of 18-months imprisonment. The case is presently on appeal. Yet, the purported vague threat of potential violence attached to 2nd Amendment commentary is very similar to those noted in

Despite proving the disparate treatment of the same or similar speech, the government contends that the Defendant's motion is based upon "conjecture." [DE:16]. Yet, the government offers no reason whatsoever for the proven disparate treatment of the only gay offender in all of these similar prosecutions and lack of prosecutions. [DE:16]. Instead, the government alleges that this was a "true threat" case and therefore prosecution was justified. [DE:16]. But this once again side-steps the issue of motivation, as the government notably treated similar speech, believed to constitute "true threats," by misdemeanor, or with no charges at all, when, in each of such cases, the offender was heterosexual. Thus, the position that this conduct constitutes a "true threat," does not resolve the issue, but actually further complicates it as it drives home the question surrounding the disparate treatment of similar

---

the Defendant's motion to dismiss by Colorado Congressman Ken Buck, who posted a video to Twitter challenging former US Representative Beto O'Rourke and former vice president Joe Biden to come to his office and take his AR-15, which he was holding in the video. The video stated: "I have a message for Joe Biden and Beto O'Rourke, if you want to take everyone's AR-15s in America, why don't you swing by my office in Washington, D.C. and start with this one, Come and take it." https://www.cnbc.com/2020/03/06/rep-ken-buck-dares-joe-biden-and-beto-orourke-to-take-ar-15-rifle.html (last accessed June 30, 2023). Buck has not been arrested or charged. Florida (state) representative Randy Fine wrote to the President on Twitter, ""I have news for the embarrassment that claims to be our President — try to take our guns and you'll learn why the Second Amendment was written in the first place." Fine was never arrested or charged by the U.S. Attorney's Office for the Middle District of Florida. Much like Buck and Fine, Kaye perceived herself to have a social media following ("angry patriot hippy") she was posting to. As can be noted from the Defendant's motion in this case, the felony and length of sentence sought by the government in the Kaye case far exceeded the treatment by the government of alleged politically based riotous trespassers in the United States capitol on January 6th.

speech that was not prosecuted, or similar "true threats" prosecuted as misdemeanors.

The January 6th prosecution information was included within the Defendant's motion as further evidence of disparate treatment by the government based seemingly upon the attendant political messaging involved: despite a riotous trespassing near the members of Congress engaged with actual business, many offenders are being prosecuted for misdemeanors far less severe than the charges in this case. As noted in the Defendant's motion, only two-single-alleged "threat" cases have been identified that are being prosecuted as felonies (with the Poller prosecution also including a misdemeanor charge). Once again, the sole identifiable difference in this prosecution is the Defendant's sexuality. The Defendant has made the required showings in this case.

WHEREFORE, the Defendant moves this Court to conduct a hearing on this motion, and at such hearing to find that this prosecution is unusual, in that the overwhelming majority of others with similar conduct have not been prosecuted for this conduct, and in such cases have only been prosecuted for multiple communications, or pursuant to a less-significant misdemeanor statute, and that this prosecution is based upon the exercise of a Constitutional right to free speech, and dismiss this case.

    Respectfully submitted,

    MICHAEL CARUSO
    FEDERAL PUBLIC DEFENDER

By:    s/ *Jan C. Smith, II*
          Assistant Federal Public Defender
          Florida Bar No. 0117341
          One East Broward Boulevard, Suite 1100
          Fort Lauderdale, Florida 33301-1842
          Tel: 954-356-7436
          Fax: 954-356-7556
          E-Mail: Jan_Smith@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on July 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ *Jan C. Smith, II* AFPD