```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         (FORT LAUDERDALE)
                        CASE NO.  23-CR-80064
 3

 4   UNITED STATES OF AMERICA,
               Plaintiff,                 Fort Lauderdale, Florida
 5   vs.                                   November 9, 2019

 6   FRANK STANZIONE,
               Defendant.
 7   -------------------------------------------------------
                          Motion Hearing
 8              BEFORE THE HONORABLE RODNEY SMITH
                    UNITED STATES DISTRICT JUDGE
 9
     APPEARANCES:
10   FOR THE PLAINTIFF:   UNITED STATES ATTORNEY'S OFFICE, by:
                          Mark Dispoto, Esq.,
11                        500 E. Broward Blvd., 7th Floor
                          Fort Lauderdale, Florida  33301
12
                          UNITED STATES CAPITOL POLICE, by:
13                        Joseph Herman Wheeler
                          499 South Capitol Street SW
14                        Washington, DC  20003

15   FOR THE DEFENDANT:   FEDERAL PUBLIC DEFENDER'S OFFICE, by:
                          Jan Christopher Smith, Esq.,
16                        One East Broward Blvd., Suite 1100
                          Fort Lauderdale, Florida  33301
17

18

19

20   STENOGRAPHICALLY
     REPORTED BY:         ELLEN A. RASSIE, RMR-CRR
21                        Official Court Reporter to the
                          Honorable Rodney Smith
22                        299 E. Broward Blvd., Room 202B
                          Fort Lauderdale, Florida  33301
23

24

25
```

1

**INDEX**

2

**DEFENDANT WITNESSES:**

3

D I R E C T    C R O S S    R E D I R E C T    R E C R O S S

4

MONIQUE CARR                          16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      **THURSDAY MORNING SESSION, NOVEMBER 9, 2023**

2                    P-R-O-C-E-E-D-I-N-G-S

3                         - - -

4           (Call to the Order of the Court.)

5           THE COURT:  Good morning.  The Court is in session.

6  United States of America versus Frank Stanzione.

7           Will the parties announce your appearance for the

8  record?

9           MR. WHEELER:  Joe Wheeler on behalf of the United

10  States, Your Honor.

11          MR. DISPOTO:  Good morning, Your Honor.  Mark Dispoto

12  appearing on behalf of the United States, as well.  Present at

13  counsel table is the case agent officer.

14          AGENT BANK:  Special Agent Joshua Bank of the United

15  States Capitol Police.

16          THE COURT:  All right.

17          MR. SMITH:  Good morning, Your Honor.  Jan Smith,

18  Federal Public Defender's Office on behalf of Frank Stanzione.

19  He's present.  I also have, if it's okay with the Court, my

20  case investigator, Monique Carr with me.  She, I anticipate

21  will be testifying during the motion, but as my witness

22  coordinator and assistant.  Your Honor, I'd ask if she can sit

23  at counsel table with me.

24          THE COURT:  All right.  Thank you.  All right.  With

25  that said, you may proceed.

1        MR. SMITH:  Thank you, Your Honor.  So, Your Honor,

2  there are three motions that are pending today and the order

3  that I would propose to handle them is as follows, if it's okay

4  with the Court.

5        The first motion that's still outstanding is the

6  second motion to compel Brady/Giglio exculpatory information

7  and as a more, I guess I would call it procedural motion than

8  the other two that are still outstanding.  I'd propose to

9  handle that particular motion first.

10       Go from that motion into the motion to dismiss for

11  selective prosecution because those two motions are related to

12  one another, and then my final presentation would be as to the

13  motion to dismiss on constitutional grounds.  If the Court's

14  okay with me proceeding that way, I can do so, Your Honor.

15       THE COURT:  All right.  You may.

16       MR. SMITH:  Thank you.  So, Your Honor, the second

17  motion to compel Brady/Giglio information, I think can be now,

18  as we indicated in our brief in support of the motion, broken

19  down as to really two pieces of discovery.  And those are as

20  follows.

21       The first is, as we indicated in our brief in the

22  submitted exhibit -- let me get you an exhibit number for that,

23  Your Honor.  We have the statement by representative, or

24  Congressman Santos CBS News in an interview in May of this year

25  in which he indicated that he had been the subject of a

1   voicemail threat to barb -- excuse me, let me read it.  A

2   strikingly similar communication, and in that communication, it

3   was indicated that he had been threatened by somebody who

4   threatened he and his partner with a baseball bat to smash

5   their head in which is, of course, strikingly similar to the

6   message that was left in this case, but the congressman

7   indicated in that interview that the U.S. Capitol Police and

8   New York City Police Department had investigated that case,

9   apparently arrested somebody for that threat, and that person

10  was being prosecuted in New York.

11         And obviously this is, or would be other than he also

12  indicated there was a bomb threat related to this as well, or

13  an additional threat.  That this is a strikingly similar threat

14  that has additional factors that the threat in this case --

15  alleged threat in this case does not.

16         So what we were looking for is we wanted to find the

17  evidence of this investigation, this arrest, this prosecution

18  to see how it was being handled, and if it was being handled in

19  the same way as this case, and so what we did is we ran a case

20  search through New York, through federal and state court in New

21  York to see if we could find this prosecution and find this

22  case, and we were unable to do so.

23         We can find no record of this prosecution happening.

24  Now, this could mean that Representative Santos was incorrect,

25  or that he was not telling the truth in the interview.  That's

1    entirely possible.  But what we asked for in our motion is

2    because he indicated that this case had been referred to the

3    Capitol Police for investigation, a federal agency that the

4    prosecution in this case is working with in this case, and that

5    would then go through the TAS section of the U.S. Capitol

6    Police, which is also the section that's working this case, we

7    asked that the Government look into whether the Capitol Police

8    have records of this threat and this prosecution that they

9    could then turn over to us so that we could then finish our

10   research.  Really just a case number to see how that case is

11   being handled.

12           The Government has indicated in their reply that they

13   are under no duty to do so.  We would argue under the Gordon

14   and Smith cases that once we have made this allegation and

15   attempted a good faith allegation because, obviously, this is a

16   quote from the alleged victim in this case himself to a news

17   organization in May in reference to this alleged threat.

18           So we can't get this information ourselves.  We have

19   tried.  And at this point, this information, if it exists, is

20   in the possession of the Government because it would be in the

21   possession of the Capitol Police TAS section.

22           And, therefore, it's in the possession the Government

23   so once we put them on notice that we're seeking this

24   information, under Kyles which we cite in our brief -- actually

25   numerous briefs, it's impugned to be in the possession the

1   Government as well.

2          And so we're asking the Court to order the Government

3   to turn over some information.  It doesn't even have to be

4   everything, just something that we, my defense team, Ms. Carr

5   and myself can work from to go find the information ourselves

6   and this information in relation to the motion I'm going to

7   argue next which is the motion to dismiss for selective

8   prosecution.

9          Because if there's evidence of a similarly situated

10  individual and, again, there are striking similarities between

11  the first portion of the alleged threat between that allegation

12  and the allegation in this case, although that one went further

13  with I believe the enhanced bomb threat, so that would be a

14  strikingly similar individual.

15         If that investigation occurred, and the person was not

16  prosecuted, then, obviously, that is critical evidence to the

17  first prong of the selective prosecution motion and that's why

18  it is -- I think evidence that falls under Brady and Giglio.

19         Now, the third piece of evidence we were seeking in

20  that motion is I think still also relevant information that

21  we're seeking under this motion.  And that is this.

22         Representative Santos was subsequent to this

23  indictment obviously arrested by federal agents, and he's been

24  charged with multiple federal crimes in the Eastern District of

25  New York.

1              In that case, Representative Santos was released on a

2    bond, and apparently it came to the attention of multiple news

3    organizations that the co-signers on the bond perhaps did not

4    have the property necessary to support the bond as indicated in

5    the paperwork.  That's irrelevant to this.  What is relevant is

6    this.  In response, Representative Santos' counsel, he filed

7    multiple affidavits with the Court in the Eastern District of

8    New York.  And in those affidavits -- this is the relevant

9    part -- he indicated that since the indictment came down

10   against Representative Santos, Representative Santos and

11   members of his staff have been threatened repeatedly in voice

12   mails and email communications.  Some of those threats or

13   alleged threats were included in the affidavit submitted by

14   Santos' lawyer in the Eastern District of New York.

15             We downloaded those, we included those in our

16   submission to the Court so the Court could see them.  More

17   importantly is there are numerous threats which were filed

18   under seal in that case that we can't see.

19             And these appear to be the more substantial threats in

20   that particular case against Representative Santos.

21   Investigator Carr will testify during the selective prosecution

22   motion that she, at my instruction, reached out to counsel for

23   Representative Santos in the Eastern District of New York to

24   see if he would agree to provide us with copies of the sealed

25   threats.

1        She will testify that counsel for Santos in New York

2   never responded to her, so we have made attempts to try and

3   obtain this information ourselves.

4        But counsel for Representative Santos in that case

5   also represented in his pleadings that these threats have been

6   forwarded to the U.S. Capitol Police and the TAS section.

7        They are presumably in receipt of these threats, and I

8   would imagine investigating them possibly for prosecution or

9   not.

10        So once again, just like in the first piece of

11   information that we're seeking, this also would form, if these

12   threats are similar to the one in this case, a similarly

13   situated individual, perhaps, that is possibly not being

14   prosecuted for their conduct or being prosecuted differently if

15   at all.

16        So, obviously, this would be relevant information to

17   the motion to dismiss, step one, for selective prosecution

18   because we have to -- we have the burden of proving that there

19   are similarly situated individuals out there who are not being

20   prosecuted, or perhaps being prosecuted differently from this

21   individual for substantially the same conduct.

22        So towards meeting our burden as you can see, for both

23   pieces of these evidence, we have attempted, me and Ms. Carr to

24   obtain these records ourselves.

25        Investigator Carr will also testify during the

1    selective prosecution motion that she reached out to Capitol

2    Police for copies of the reports we were looking for from the

3    New York case.  And in that New York case, obviously Capitol

4    Police TAS investigated the case.

5         Counsel, lead counsel for the Capitol Police responded

6    to Ms. Carr that -- she'll testify to this -- but I'll front it

7    for the Court.  That there was -- that they would not turn over

8    such records, and even if they did, they would be so heavily

9    redacted when they gave them to us that we would see the word

10   basically "the" and everything else would be blacked out.

11        So we have made attempts to obtain this information in

12   the New York case that Representative Santos indicated exists

13   and in the sealed affidavits that Representative Santos'

14   counsel submitted in the Eastern District of New York to keep

15   from identifying the co-signers on the bond.  We can't get

16   them.

17        But in both of those cases, the allegations are

18   Representative Santos and counsel are that those reports of

19   those threats are in the possession of the Government, the same

20   law enforcement agency of the Government that is involved in

21   this prosecution with the U.S. Attorneys on this case.

22        While it may not be the same agents, the same agency.

23   So, under Kyles v. Whitley which we, again, have cited numerous

24   times, this information is in the possession the Government, we

25   have made them aware of this.  It is exculpatory towards the

motion to dismiss for selective prosecution, and we're asking

the Court to order the Government to turn it over.  That's the

first motion.

          THE COURT:  All right.  Response?

          MR. WHEELER:  Yes, Your Honor.  I think initially

it's important to talk about the burden of the standard of

proof here.  The burden obviously lies with the defense.

          The Supreme Court has been clear on the selective

prosecution motion as to what the test is, and that there's two

prongs to that test.

          First, that the defendant show that by clear evidence,

not simply an initial showing as the defense has mentioned

today, but by clear evidence that he has been singled out for

prosecution, although others similarly situated who have

committed the same acts have not been prosecuted.

          And the second prong is that the Government's

selective prosecution of him has been constitutionally

invidious.  That's the standard on the selective prosecution

claim, but the Supreme Court has been clear that for discovery

on a selective prosecution claim, that that standard needs to

be correspondingly rigorous.

          The reason for that is that the justification for

rigorous standards on the elements of the selective prosecution

claim itself require a correspondingly rigorous standard for

discovery in aid of such a claim.

1          What the defense is claiming, if these reports exist,

2    are law enforcement extensive reports about what could be

3    ongoing investigations, and they certainly have not made the

4    initial showing either on the first prong, they haven't even

5    attempted to make a showing on the second prong.  That the

6    Government's selective prosecution of him has been

7    constitutionally invidious.

8          The Supreme Court has explained that that requires the

9    decision whether to prosecute can't be based on an

10   unjustifiable standard such as religion or other arbitrary

11   classifications.  All they've provided this Court is the mere

12   speculation or the personal determinations that courts have

13   cautioned against in the past.

14         The Eleventh Circuit has talked about this standard on

15   discovery, as well.  And kind of summing up what the Supreme

16   Court has said within Armstrong, and in Wayte, in Cannon, the

17   Eleventh Circuit as recently as 2021 said the discovery on a

18   selective prosecution claim is subject to a correspondingly

19   rigorous standard.

20         In this case, Your Honor, the defense simply has not

21   met that standard to receive documents that were presented

22   under seal by a victim of this crime, and possibly of other

23   crimes, or to receive law enforcement's extensive reports about

24   investigations that may or may not be occurring.

25         The Government is not alleging that there are a

1    specific number of reports that would be responsive, but simply

2    that the discovery in this case would be improper because none

3    of the standards required have been met.

4            The second prong hasn't been met even at a very low

5    standard, and the standard for both of those is clear evidence.

6    None of that has been supplied at this point either on the

7    motion itself or even to get to the discovery piece.

8            MR. SMITH:  Your Honor, in response, I'm going to

9    point the Court to two document entries.  The first is our

10   document entry number 37.

11           THE COURT:  Wait.  Give me second.

12           MR. SMITH:  At page 5 of 8 in that docket entry, we

13   quote from United States versus Armstrong which is the Supreme

14   Court case the Government's referring to which is 517 United

15   States 456 from 1996.

16           So what's happening here is is that the Government is

17   quickly moving to the second prong of a selective prosecution

18   motion.  I'm not arguing that motion yet, although the Brady

19   motion is in reference to it.  This is a different standard.

20   This is a discovery motion.  And here's what Armstrong said

21   about this.

22           It indicates that the defendant, in a selective

23   prosecution motion, is not ordinarily entitled to discovery

24   from the Government unless -- now here's the caveat -- there's

25   some proof in the Government's possession that may reveal the

1    elements.  Elements being Step 1 and Step 2 of the selective

2    prosecution motion -- of the selective prosecution defense.

3           We have proven to Your Honor that there are

4    allegations from Representative Santos and his lawyer of

5    materials in the Government's possession.  We've done that.

6    We've tried to obtain them ourselves.  We can't.  These may

7    reveal elements of the selective prosecution defense and,

8    therefore, we are entitled to them.

9           So what happens is is that then the Government does

10   have to turn over discovery, which they wouldn't ordinarily

11   have to do in a selective prosecution motion.  And we're not on

12   some far reaching expedition here.  We're not asking for all

13   the evidence from all these exhibits that we indicated in our

14   exhibit list we're going to be filing today.  We're asking for

15   two things.  Just those two things.  This is very tailored to

16   this issue.

17          So, if you go to docket entry 49, which was our

18   supporting brief for the hearing on this second motion to

19   compel exculpatory evidence, you'll see on page 9 a quote from

20   Armstrong, the case at issue here.  And it indicates the

21   threshold which would trigger the requirement that the

22   Government produce discovery materials related to selective

23   prosecution.

24          I'm going to pause there for a moment.  The Government

25   is already talking about clear and convincing evidence for the

```
 1   selective prosecution motion.  That's not where we're at yet.

 2           In this motion, here's the burden.  It says from

 3   Armstrong:  We think the required threshold, a credible showing

 4   of different treatment of similarly situated persons adequately

 5   balances the Government's interest in vigorous prosecution and

 6   the defendant's interest in avoiding selective prosecution.

 7           So we have made the Court and the Government aware of

 8   evidence in their possession claiming from Representative

 9   Santos and his counsel which appear to show different treatment

10   of strikingly similarly situated individuals, and for purposes

11   of this motion, we believe that the Court must order the

12   Government to turn just those tailored documents over to us.

13           We're asking for nothing else other than those

14   particular documents, or some portion of them so that we can

15   complete our search for a prosecution based on these as we need

16   to to prove Step 1, so that's what we're asking for.  That's

17   the threshold in this case.

18           THE COURT:  All right.  You can call your first

19   witness, Mr. Smith.

20           MR. SMITH:  Yes, Your Honor.  I'll call Ms. Carr.

21           THE COURTROOM DEPUTY:  Please remain standing.  Raise

22   your right hand.

23

24

25
```

```
 1                         (Witness sworn.)

 2              THE WITNESS:  I do.

 3              THE COURTROOM DEPUTY:  Great.  Thank you.  Give us

 4    your name with the spelling for the record.

 5              MR. SMITH:  Your name, and spell your last name,

 6    Monique.

 7              THE WITNESS:  Monique Carr, C-A-R-R.

 8                         -  -  -  -  -

 9              DIRECT EXAMINATION OF MONIQUE CARR

10    BY MR. SMITH:

11    Q.   And, Ms. Carr, where are you employed?

12    A.   The Public Defender's Office.

13    Q.   And how long have you been employed there?

14    A.   23 years.

15    Q.   And how long have you been an investigator with our

16    office?

17    A.   15 years.

18    Q.   Are you the investigator assigned to assist me in the

19    Frank Stanzione case?

20    A.   Yes.

21    Q.   And in reference to that case, did I direct you to attempt

22    to locate Capitol Police reports in reference to a claim made

23    by Representative Santos in May to CBS News about a case in New

24    York?

25    A.   Yes.
```

1    Q.    And can you tell the Court what efforts you undertook to

2    try and obtain this information?

3    A.    I went through various investigative sites, Googled

4    basically, and used Pacer and other things trying to find it

5    and was not able to.

6    Q.    Did you contact the Capitol Police about reports of this

7    case?

8    A.    Yes, I did.

9    Q.    And can you tell the Court who at the Capitol Police you

10   contacted?

11   A.    Initially, I called the main number to Capitol Police.

12   Then they directed me to their records section.  When I called

13   the records section, the conversation was very brief.  I

14   explained what I needed, and he said I can't -- the records

15   that I will provide to you will be heavily redacted and you

16   wouldn't see anything, so he directed me to general counsel.

17         And once I reached general, the general counsel's office,

18   I spoke to Ruth Dixon and she instructed me to email her the

19   request, and I asked her what steps would be next and she said

20   they'll call you if they want to speak to you, or they won't.

21   Q.    And did you get a call from them?

22   A.    No, I did not.

23   Q.    Did you get an email response from them?

24   A.    No, not me personally, from them.  I was forwarded an

25   email from you with a response from the AUSA's office.

```
 1   Q.   And what was that response?
 2   A.   We don't have anything.
 3   Q.   Okay.  Let's shift to the Eastern District of New York
 4   case.
 5   A.   Yes.
 6   Q.   Are you familiar with that?
 7   A.   Yes.
 8   Q.   And did I direct you to make attempts to try and obtain
 9   the sealed documents in that case?
10   A.   Yes.
11   Q.   And what, if anything, did you do to try and obtain those
12   documents?
13   A.   I called his Representative Santos' attorney, Mr. Murray.
14   I left a voicemail message at the number he left on the notice
15   that he filed with the court, and I also called an additional
16   number that was on the docket.  It was a separate number.  And
17   I left voicemail messages, and never got a response.
18   Q.   All right.  So nobody responded to you?
19   A.   No.
20           MR. SMITH:  Okay.  Thank you.  I have no further
21   questions, Your Honor.  I pass the witness.
22           THE COURT:  All right.  Any cross-examination?
23           MR. WHEELER:  No, Your Honor.
24           THE COURT:  All right.  You may step down.  Thank
25   you.
```

1          MR. SMITH:  Your Honor, the remainder of our

2    witnesses are in reference to the other two motions that are

3    going to be argued next.  Would you like me to start into the

4    motion for selective prosecution dismissal, or do you want to

5    conclude this motion first?  Whatever the Court prefers.

6          THE COURT:  We can address this motion first.  The

7    Court is going to require that the Government provide those

8    documents over.  Those two documents as requested.  The Court

9    finds that there is a credible showing thus far to move forward

10   with this matter by the defense.

11         Now, look, we're not going to have this case

12   lingering, so if you don't want to turn it over, that's fine,

13   but I'll tell you if we get to the point you intend to move

14   forward without turning over those documents, they file a

15   motion to exclude witnesses and the Government wants to go down

16   that path, they can do so.

17         We're not going to tie up my docket with redacting

18   something that is going to say "the."  That's a waste of time

19   here.  I don't know how you guys are going to prosecute this

20   case.  I don't question the Government's decision how to

21   proceed but, again, I want to be clear.  If you're not going to

22   follow my instructions, I'm not going to beg anybody to do the

23   right thing at all.  I'm going to be clear with that.

24         So, either you provide them, if you don't, that's

25   fine.  We'll move forward.  If you file appropriate motions, we

 1    proceed to trial.

 2             However, if you don't, just like you have those

 3    witnesses say "the," that's what you're going to have

 4    proceeding to trial as well if you want to choose to go that

 5    route.

 6             With that said, how many days you are requesting to

 7    turn over those documents, Government?

 8             MR. WHEELER:  Your Honor, may the Government be heard

 9    on the actual standard here, Your Honor?

10             THE COURT:  Sure.

11             MR. WHEELER:  We haven't had a chance to address the

12    first part of this.

13             THE COURT:  We just did.  We just went over the

14    standard.  I made a finding, so if you want to go and repeat

15    yourself, you can.

16             MR. WHEELER:  Thank you, Your Honor.  Could we please

17    be clear on exactly what the Court is asking us to turn over?

18             THE COURT:  Yes.  The two documents that was

19    requested by the defense in their motion.  They're not asking

20    for a slew of evidence.  This is not a fishing expedition as

21    well.  Those two documents are something so they can look at to

22    determine whether or not how to proceed with their case.

23             Thus far, they made an attempt to contact the Capitol

24    Police.  They talked to Santos' attorney, as well.  They're

25    getting met with resistance, so we're here with nothing.

1    MR. WHEELER:  Yes, Your Honor.  Documents that were

2  filed under seal in a different district are not going to be

3  something that the Government can require that Court to unseal

4  within that separate case.

5    And I just want to be clear if -- I want to be clear I

6  guess which particular threats, because I understand that

7  you're saying to -- it sounds to me they're asking for many

8  more than that.

9    THE COURT:  No, it's only two.  It's only two.

10  They're not -- tell him.

11    MR. SMITH:  Yes, Your Honor.  In document 49, right,

12  under subcategory subheading 1, it would be lowercase Roman

13  numeral I, and lowercase Roman numeral III.

14    And what we're looking for is the Capitol Police

15  records of those two investigations and/or prosecutions

16  resulting from them.  That's it.

17    MR. WHEELER:  Under Roman numeral, sub Roman numeral

18  III, Your Honor, it says evidence related to an alleged

19  multitude of death threats made to the Congressman and his

20  staff members as included in a partially sealed submission to

21  the United States District Court in the Eastern District of New

22  York.

23    If the defense will give us names of investigations

24  that they want, and they will give us a date of a specific

25  threat that they're looking for, I'm not saying that we can't

1   do this.  We may very well be able to.  I don't know.

2          The Capitol Police is a legislative agency and,

3   therefore, not subject to FOIA.  There are different rules of

4   release, but I'm not saying that we won't make the efforts,

5   Your Honor, but six of the threats, we don't necessarily know

6   which six people that they're talking about.  And I don't think

7   that to be fair, that they know that because these are sealed

8   documents up in a separate district in a separate court case.

9          MR. SMITH:  So, Your Honor, we do not know the names

10  obviously because it's under seal, but the counsel for

11  Representative Santos in that case indicated that all of those

12  particular cases were referred and given to Capitol Police TAS.

13         It would seem that a call or contact to that same law

14  enforcement agency as involved in this case to find out who's

15  handling those investigations could quickly reveal what the

16  progress -- what the nature of those threats were.

17         THE COURT:  Look, all you have to do is have a

18  conversation.  You know what the source is.  Have a

19  conversation exactly what you're looking for, narrowly tailor.

20  You're not here to ask them to release the entire file or

21  anything else.  This is a narrow issue here.

22         MR. WHEELER:  Yes, Your Honor.  As the Court has

23  before it in Defense Exhibit PPP, there's a witness by the name

24  of Gabrielle Lipsky.  She's a staffer within the office of

25  George Santos.  I don't know that particular office, but most

1    offices are a lot of 18 and a half individuals within their

2    office.

3              This is one individual.  She supplied a declaration to

4    the defense that she had submitted I believe 15 separate

5    incidents over the course of just a ten month -- not even a ten

6    month span.  Not even an eight month span actually of

7    concerning communications.

8              So when offices submit concerning communications to

9    the United States Capitol Police, many of them are not actually

10   threats as you and I may look at them based on the law.  But

11   they could be simply a love letter came in, we're concerned,

12   there's a little bit of extra interest in the Congressman, we

13   kind of want you to look into this person.  So I don't know

14   exactly how many --

15             THE COURT:  They're not referring to love letters

16   obviously.

17             MR. WHEELER:  Of course.

18             THE COURT:  They're threats.  That is germane and

19   relevant to this issue as to their defense of selective

20   prosecution.  They're not asking for a garden variety of

21   issues.  This is a narrow particular issue.  If they were to

22   ask for a whole bunch of things beyond that, I would have

23   denied it.

24             MR. WHEELER:  Understood.

25             THE COURT:  They're not unreasonable with what

1    they're seeking.

2         MR. WHEELER:  Would it be sufficient if the

3    Government were to supply them at least six reports of

4    concerning communications that came in from the office of

5    Representative Santos?

6         I don't know if we can work those to get released, but

7    if we get at least six of those reports that were supplied to

8    the office, if he wants to give us a particular time span he's

9    looking for, if he wants to give us we're looking for them for

10   this certain area of the country, we may be able to try to have

11   them track those down but for right now, I think that for us to

12   be able to be able responsive, we are looking at a litany of

13   concerning communications and like I say, maybe none of them

14   being threats.

15        THE COURT:  That's fine.  The bottom line is that by

16   sitting here now without investigating, we don't know.  But we

17   do know that if you don't do anything, nothing's happening.  So

18   you have to start with something, sir.

19        MR. WHEELER:  Yes, Your Honor.

20        THE COURT:  Because remember, it was Representative

21   Santos who volunteered and made these statements on the news,

22   right?  No one asked him and told him to go make these

23   statements.  If he doesn't say anything, we wouldn't be in this

24   predicament here now.

25        We do know, whether he was credible or not, we don't

1    know.  The fact that you do have those statements being made,

2    right?

3         MR. WHEELER:  Apparently from a news article, yes.

4    That's my understanding, Your Honor.  And I have no reason to

5    believe that the journalist is lying, or that the defense has

6    presented anything false.  I'm not suggesting that in any way.

7         AGENT BANK:  Your Honor, may I confer with

8    Mr. Wheeler for one moment?

9         THE COURT:  Sure.

10                        (Short pause.)

11        MR. WHEELER:  Your Honor, the Government is keenly

12   aware that we have a trial date scheduled eleven days from now,

13   and in order to do this right, if we're going to make the

14   attempt, I don't know that eleven days is sufficient.

15        Is the Court inclined to continue the case to allow

16   the Government to comply with the order, and at least provide

17   an initial stash of documents to the defense for them to look

18   over and determine if there's additional documents that they're

19   requesting?

20        THE COURT:  Let me hear from the defense position.

21        MR. SMITH:  Your Honor, I would have no objection to

22   that because of the importance of the possible documents we're

23   going to get.

24        THE COURT:  All right.  The Court will grant a

25   continuance in light of while this is pending for compliance,

1    absolutely.

2            MR. WHEELER:  And the process that we will undertake,

3    and I just asked if this is sufficient both for the Court and

4    for the defense, we would look at all of the concerning

5    communications that had come to the office since this report

6    which I believe was January 30th of this year.

7            Of those concerning communications at the Threat

8    Assessment Section there, the TAS, there are I believe three

9    individuals that do the initial triage of those reports that

10   come in.  They look at them.  They say either this is a

11   direction of interest, or this is a threat.  That's just an

12   initial look.

13           After investigation, many of those threats may be

14   determined not to be threats, but we would look, first to all,

15   of those threats and determine how many of them had actually

16   come in and there may only be one or two.  If there are less

17   than six, then we will try to look at some of the other

18   concerning communications that were not even viewed as threats,

19   and provide at least six different concerning communications.

20   The member's name and the staff members names would definitely

21   need to be redacted though, Your Honor.

22           THE COURT:  I understand that.

23           MR. WHEELER:  I don't think it's possible that we'd

24   be able to supply a fairly unredacted document, and that's me

25   making that statement without conferring with the people who

1    will be doing that approval likely.

2            THE COURT:  I understand that.  I think that's

3    definitely fair and reasonable, yes.

4            MR. SMITH:  Yes, Your Honor.  So we will certainly

5    take anything that could be provided, but I can perhaps help in

6    that really what we're looking for is just those two directed

7    ones because of the apparent striking similarity because that's

8    the standard on the next motion.

9            THE COURT:  Remember, they're not seeking again to

10   cast a wide net and asking for everything.  It was narrowed to

11   those two things that are strictly similarly striking.  That's

12   similar.  That's it.  No one is asking the Government to go on

13   a wide goose chase to open up and part the Red Sea for this.

14   Just very narrowly tailored.

15           MR. WHEELER:  Maybe there's a clarification that I

16   can get today.  We have the first one that he's looking for as

17   far as the someone in New York making a statement about a

18   baseball bat.

19           The second one though has -- it just simply states six

20   threats filed under seal.  Since we don't know what those

21   threats were, is there something more than that that we can

22   could go on?  As far as what the second one, it looks like the

23   second one is actually six.  I could be misunderstanding, Your

24   Honor.

25           MR. SMITH:  So counsel for Representative Santos in

1    the Eastern District of New York in an affidavit to the Court

2    there --

3              THE COURT:  What is the counsel's name for the

4    record?

5              MR. SMITH:  Murray.

6              THE COURT:  And he's still representing him today, as

7    well?

8              MR. SMITH:  As far as I know, yes, Your Honor.

9              MS. CARR:  His name is Joseph Murray.

10             MR. SMITH:  Joseph Murray, Your Honor.

11             THE COURT:  Okay.

12             MR. SMITH:  We have his information here.  He's in

13   Great Neck, New York.  So he alleges in a sworn affidavit to

14   the Court that he referred these six sealed -- we don't know

15   what they are -- threats to TAS at the U.S. Capitol Police.

16             It would seem to me that if law enforcement were to

17   contact the TAS section and ask who handled the referral from

18   Joseph Murray, perhaps we can get directly to those six.

19             MR. WHEELER:  Your Honor, if any threats were

20   directed from Mr. Joseph Murray, I will certainly track those

21   down.  That is certainly typically normally either an officer

22   or a staff member in an office would be directing them to the

23   task, so I could be wrong.

24             I haven't read the document that they're alleging is

25   somewhere up in New York, but I think it is highly likely that

1    this attorney is simply stating that those six amongst all the

2    other concerning communications had previously been reported.

3           But we certainly will look for anything that would

4    have been reported by Mr. Joseph Murray from outside the

5    Capitol.

6           THE COURT:  Thank you.  Do we need to proceed to the

7    other motions now?  Are we not --

8           MR. SMITH:  I can proceed with it, but Your Honor is

9    right.  With those documents being ordered, it's going to take

10   the Government some time to get them, and relating to that

11   motion, it may be best to delay that particular motion until we

12   get an answer to that.  But if Your Honor wants to go forward

13   on it today, I can without them.

14          THE COURT:  What's the Government's position?  Do you

15   want to go forward today, or do you want what is materialized,

16   if any, from the first request?

17          MR. WHEELER:  Your Honor, the Government's ready to

18   proceed, but I guess my fear would be that we'd be wasting the

19   Court's time if we proceed today and the Court denies the

20   motion.

21          If the defense does get these documents, they may turn

22   around say now we have those, we want you to relook at this.  I

23   think it does make sense to proceed on the First Amendment

24   motion, and handle that today.

25          THE COURT:  I agree.

1      MR. WHEELER:  I also just want to clarify with the

2  Court, as to the first request that for the quote, Brady and

3  Giglio material, that the defense may -- that the Government

4  has been fully responsive and that that's now mooted.

5      MR. SMITH:  Yes.  That's correct, Your Honor.  The

6  first request was responded to and is moot.

7      THE COURT:  You're withdrawing the motion?

8      MR. SMITH:  There was a first Brady motion that was

9  filed in this case that we were not seeking to argue here today

10  because the Government did respond to it.

11      THE COURT:  All right.  So you are you withdrawing

12  that motion then?

13      MR. SMITH:  We can, yes, Your Honor.  The first Brady

14  motion is withdrawn, Your Honor.

15      THE COURT:  Thank you.  If we need to reset it, we

16  can set it for a status.

17      MR. SMITH:  Yes, Your Honor.

18      THE COURT:  And 30 day status report?

19      MR. WHEELER:  Say that again, Your Honor.

20      THE COURT:  We can set it for status in 30 days to

21  let me know where we were.

22      MR. WHEELER:  Absolutely.  Understood.

23      THE COURT:  Patricia, give us a 30 day status.

24      THE COURTROOM DEPUTY:  Status will be December the

25  11th.  December the 11th at 9:00 a.m.

```
 1              THE COURT:  All right.  Thank you.

 2              MR. SMITH:  So, Your Honor, with the Court's

 3    permission, I can move to the motion to dismiss on

 4    constitutional grounds.  I believe that we would call four

 5    witnesses for that motion who are also going to be witnesses on

 6    the selective prosecution motion, but they cross over.  I think

 7    that -- well, Special Agent Bank is here, so he's not on Zoom

 8    but I believe that Special Agent Hurtig is on Zoom.  Charles --

 9    no?  Yes, Guillermo Torres I believe is on Zoom, and Charles

10    Lovett is on Zoom.  Naysa Woomer was also on Zoom, but she was

11    only as to the selective prosecution motion and we can dismiss

12    her.

13              THE COURT:  Okay.  Ready to proceed on that?

14              MR. WHEELER:  Yes, Your Honor.

15              THE COURT:  All right.

16              MR. SMITH:  Your Honor, we can do the Zoom witnesses

17    first?

18              THE COURT:  Sure.

19              MR. SMITH:  Why don't we start -- I think Mr. Lovett

20    is the fastest of them.

21              MR. WHEELER:  Judge, can we have just have a moment,

22    please, before we start?

23              THE COURT:  Sure.

24              MR. DISPOTO:  May I the address the Court?

25              THE COURT:  Yes, sir.
```

 1          MR. DISPOTO:  On behalf of the Government, I'm going

 2    to address the defense motion to dismiss on First Amendment

 3    grounds.  My apologies if I'm confused.

 4          If I understand correctly, the witnesses that the

 5    defense is seeking to call at this stage of the proceedings

 6    today relates to the motion to dismiss on First Amendment

 7    grounds.

 8          If that's the case, the Government at this point would

 9    object to those witnesses because this is a motion that doesn't

10    need witness testimony to adjudicate.  The allegation is on its

11    face, this indictment should be dismissed because the threats

12    are not true threats.  Those are legal issues for the Court to

13    determine that does not need or require any factual

14    development, especially from the witnesses that defense seeks

15    to call.  So the Government's just a little confused as to

16    where we're going at this stage in the proceedings today.

17          THE COURT:  Yeah.  Mr. Smith, you want to address

18    that because this is a legal issue?  Why do we need to have

19    these other witnesses to address purely constitutional

20    questions the Court will resolve on a motion itself?

21          MR. SMITH:  Yes, Your Honor.  So actually, with all

22    respect to the Government, that is entirely incorrect.  So let

23    me map this out for the Court first.

24          And that is this:  The only prosecution under Section

25    875(c) that is permissible is a prosecution based on true

 1    threats, and I'm going to get to that in my argument.  Anything

 2    aside from a true threat, it could be a threat but if it is not

 3    a true threat as that term is designed, it cannot be prosecuted

 4    because it constitutes pure speech under the First Amendment.

 5            Now, the Government is right that what is going on

 6    here today is that we are going to have to dive into this issue

 7    of was this a true threat.  The issue regarding a true threat

 8    and how you figure that out is it can only and must, absolutely

 9    mandatory must be determined by the context.

10            And, therefore, courts -- and the Government agrees

11    with this -- they cited to the Baker case in their reply

12    pleadings and I have other pleadings from other United States

13    Attorneys I'm going to reference where they talk about these

14    contextual factors that either make something a true threat or

15    not a true threat.

16            What we have to do at this hearing, we actually have

17    to put evidence of context in so that the Court can make its

18    legal ruling, and that's why these witnesses are mandatory.

19            THE COURT:  Who are those witnesses?  What are they

20    going to testify to?

21            MR. SMITH:  So, Mr. Lovett, I believe is on the

22    screen and Mr. Lovett would -- so one of the factors that the

23    Court can consider is the reaction of the recipient, and so I'm

24    going to ask him questions about the communication to

25    Representative Santos, reaction.  That's going to be critical

1   towards the context.

2          Agents Hurtig and Torres did an interview.  Actually,

3   really what it is is a true threat interview with Mr. Stanzione

4   two days after the phone call, and so they have a wealth of

5   contextual material to offer this court about true threat

6   factors.  And Special Agent Bank, as well, in his investigation

7   was also I'm assuming looking for true threat factors as well.

8          So these four witnesses are all witnesses who will

9   testify as to factors that a multitude of courts as cited in

10  all of our briefing have referred to as true threat factors.

11          And this is in addition to the First Amendment issue

12  of whether it's true threat or not.  It also encompasses Fifth

13  and Sixth Amendment issues about what's been charged here and

14  whether it's been charged properly and if not, the Court will

15  be required to dismiss this indictment.  So that's what we're

16  headed for, Your Honor.

17          MR. DISPOTO:  Judge, may I respond to that?

18          THE COURT:  Yes, sir.

19          MR. DISPOTO:  Your Honor, this is the kind of factual

20  development that makes this motion before Your Honor on

21  constitutional grounds deniable.  This is why we have a jury.

22          The jury is to consider those factual considerations.

23  The motion to dismiss needs to be adjudicated and must be

24  adjudicated within the four corners in the indictment.  Federal

25  Rule of Criminal Procedure 7(c)(1) so mandates.

1          It's not for the Court at this juncture to delve into

2     through an evidentiary hearing the contextual factors that the

3     parties clearly disagree at this point with respect to whether

4     it's a true threat.  That's why we have a jury.

5          So unless the Court determines on constitutional

6     grounds based on the four corners of the indictment that this

7     indictment is -- is admissible, it's -- the Government is

8     entitled to have this case presented to a trier of fact subject

9     to a Rule 29 determination by the Court for an ultimate

10    disposition.

11         I would cite to, Your Honor, a recent case.  United

12    States versus Kay which was prosecuted by this office in front

13    of Judge Rosenberg where an identical First Amendment claim was

14    made on a motion to dismiss.

15         There was no testimonial hearing before Judge

16    Rosenberg on that case.  She adjudicated that on the papers as

17    she was required to do, and denied the motion in part stating

18    that this is why we have a jury.  It's for the jury to consider

19    the kinds of contextual factors Mr. Smith is currently claiming

20    supports his position.

21         So we would object to any type of a testimonial

22    hearing, and we would ask the Court to rule on the motion based

23    on the papers and based on the four corners of the indictment.

24          THE COURT:  All right.  Look, when I read this motion

25    as well, that's why when I was asking why are we having

1  testimony of it, I was somewhat perplexed.  This is not the

2  type of motion where the Court is taking testimony here.

3  That's something that would go before the Court at a jury trial

4  and, of course, Rule 29 at that point would be more appropriate

5  to make that decision because I don't want to waste these

6  individuals' time on Zoom.  This is not proper before this

7  Court at this point to do so.  So --

8        MR. SMITH:  So, Your Honor, in response, I would say

9  this:  Without testimony, you have to dismiss this indictment

10 right now.  This is not the same as the Kay case.  What we

11 alleged, what you'll see in our brief in support of our

12 document --

13        THE COURT:  Not necessarily.  I have to look at the

14 four corners of it.  If there's any basis to deny it, the Court

15 can still deny it, but, again, you still don't lose your --

16 Mr. Stanzione, rather, is forfeiting his right to argue a Rule

17 29 should we get to that point at trial.  I have to go strictly

18 on the four corners of it.

19        MR. SMITH:  And the four corners of the indictment,

20 if you look at the indictment in this case, and this was not

21 raised I believe in -- I wasn't the defense counsel on the Kay

22 case, but this was not raised in Kay.

23        The First Amendment is the factual -- or excuse me,

24 the constitutional baseline in this case, this is what the

25 First Amendment basically creates, an additional element that

1    is not on the face of the statute, okay?

2         So what happens in this case is is that the defendant

3    is charged by a grand jury with a violation of 875(c).  The

4    indictment alleges that he intentionally threatened -- it says

5    did knowingly transmit in interstate commerce a communication,

6    that's the first element.  If you look at our jury instruction

7    as I indicate in the brief, that's the first element.

8         It then goes to the second element.  Containing a

9    threat to injure the person of another, Victim 1, with the

10   intent to communicate a threat, and with the knowledge that it

11   would be viewed as a threat in the recorded voicemail.

12        What the Government has done is the grand jury has

13   only alleged a threat which 875(c) on its face permits because

14   the statute doesn't say true threat.  The statute says any

15   threat.

16        But what's happened is is the Supreme Court has

17   repeatedly grafted on to the facial language of this statute an

18   additional essential element because of the First Amendment,

19   and that additional essential element is that it's not any

20   threat.  It has to be a true threat, okay?

21        So a threat itself, if it's not a true threat -- and

22   the Government has already said to Your Honor, well, when we

23   review these, they might just be a threat.  They might be a

24   romance letter.  We have to determine which of them become

25   prosecutions.  So they're admitting that there are cases that

 1   are threats that are not true threats.  This doesn't allege a

 2   true threat.

 3          Now, yes, an indictment does not have to track the

 4   statutory language to its T, but it does have to include all

 5   the necessary elements.

 6          And if you look at this indictment, there is no

 7   element in here to establish a true threat.  And that's what I

 8   want to argue and present evidence to the Court of.  How do you

 9   establish evidence of a true threat?

10          The Courts have been very clear about this.  You go to

11   the entire factual context.  Now I referred in my brief

12   repeatedly to the Syring case, S-Y-R-I-N-G, out of the DC

13   Circuit and there's a reason for that.

14          The Syring case dealt with a very similar issue other

15   than that was a multiple threat case, and it wasn't to a member

16   of Congress.  But if you look at the Government's pleadings in

17   that case, their response to the motion to dismiss, the

18   Government in three places in their response motion -- and I

19   have a copy of it if you want to see it -- the Government's

20   response to that motion by an Assistant United States Attorney

21   from the National Security Division, very well known in the

22   Department of Justice at the time, she prosecuted the Libyan --

23   U.S. Embassy in Libya terrorism case.  Very well known.

24          She indicates in there three separate times that one

25   of the critical factors the Court can look to for context to

1    establish whether it's a true threat is repeated communication.

2         Now the judge in Syring in both the body of the

3    opinion and in a footnote indicates the indictment was

4    troubling in that case because it did not include the essential

5    element on its face perhaps of a true threat just like I'm

6    alleging here.  But the Court said, one, the defendant didn't

7    challenge that as a Fifth and Sixth Amendment violation in that

8    case; and two, more importantly, because it was three counts of

9    threats in that case, there was evidence you could look to in

10   the indictment of repeated threatening communications which is

11   a contextual -- very important contextual factor for proving a

12   true threat.  And so they got by it.

13        But in this case, there is nothing in the indictment

14   that says that the grand jury in this case was ever presented

15   with evidence, or returned a finding of probable cause of

16   evidence for a true threat.  There is no contextual

17   information.  There's no contextual allegation of a true

18   threat.  And, therefore, this indictment fails on Fifth and

19   Sixth Amendment grounds.

20        THE COURT:  All right.  Any response?

21        MR. DISPOTO:  Yes, Judge.  Your Honor, as I look at

22   the defense's motion that they filed two days ago or three days

23   ago on this issue, I'm not seeing a single case cited by the

24   defense to support the proposition that an indictment should be

25   dismissed simply because it alleges that a threat was made as

1    opposed to a true threat.

2            In fact, I believe in the Kay case, Ms. Kay, within

3    the indictment itself, was similarly charged with making a

4    threat although the judge ultimately, as she was required to

5    do, did charge the jury on the true threat requirement.  So

6    there's not a single case where an indictment was dismissed as

7    the defense is asking today.

8            It's the Government's position that the indictment in

9    this case does accurately track the language of the statute.

10   It does properly outline the essential elements of the crime

11   charged.  And, therefore, on its face is not constitutionally

12   defective and that the motion should be denied.

13           THE COURT:  Look, the defense does have his right

14   again to move forward with the Rule 29 should we get to that

15   point, and I'm not going to allow these witnesses to testify.

16   I think it's not proper under this particular motion.

17           The Court looks at the four corners of it, and does

18   not find that based on with the submission the motion should be

19   dismissed.

20           Again, you do have preserve your rights and again, all

21   those witnesses you have, should we get to that point, fine,

22   you can preserve your testimony at that time here and not waste

23   your time or this Court's time because the motion to dismiss is

24   denied on those grounds.  Okay?

25           MR. SMITH:  Your Honor, could I make a request based

1   on your ruling?

2         THE COURT:  Sure.

3         MR. SMITH:  Could I request early Jencks information

4   in this case as to the grand jury testimony of the testifying

5   agent because if we were to find that there were no

6   allegations -- or I shouldn't say allegations.  There were no

7   evidence, there was no evidence presented by the testifying

8   witness of the true threat contextual factors to the grand

9   jury, then I think it would be -- it would prove this motion.

10  And if so, then obviously not.

11        THE COURT:  All right.  Response?

12        MR. DISPOTO:  Two things, Judge.  First we would

13  oppose the request.  But secondly, we haven't made a

14  determination as to whether the grand jury testimony is Jencks

15  because it remains to be seen whether Agent Bank will testify

16  at trial.  Obviously, if Agent Bank does testify at trial, and

17  it becomes Jencks, we have an obligation to turn it over but at

18  this juncture, Judge, we would oppose the request.

19        THE COURT:  I'm going to deny the request at this

20  point here.  Again, you still have the opportunity to move

21  forth and we'll cross that bridge when we get there.  There's a

22  number of things that we haven't even gotten far with.

23        I think it's premature at this point, so I'm going to

24  deny the motion to request the Jencks material to be turned

25  over at this time.

1          Anything else?

2          MR. DISPOTO:  No, Your Honor.  Nothing from the

3     Government.

4          THE COURT:  From defense?

5          MR. SMITH:  Those were our three motions, Your Honor.

6     We will proceed as ordered by the Court.

7          THE COURT:  All right.  Thank you.  You can tell the

8     Zoom people that we're done.  Thank you.

9        (Thereupon, this proceeding was adjourned at 11:41 a.m.)

10

11                    C-E-R-T-I-F-I-C-A-T-E

12          I hereby certify that the foregoing is an accurate

13     transcription of the proceedings in the above-entitled matter.

14

15     NOVEMBER 28, 2023          Ellen A. Rassie_____
                                  ELLEN A. RASSIE, RMR-CRR
16                                Official Court Reporter
                                  To the Honorable Rodney Smith
17                                299 East Broward Blvd., Room 202B
                                  Fort Lauderdale, Florida  33301
18                                (954)769-5448

19

20

21

22

23

24

25

**AGENT BANK: [2]**
3/14 25/7
**MR. DISPOTO: [8]**
3/11 31/24 32/1 34/17
34/19 39/21 41/12
42/2
**MR. SMITH: [33]**
3/17 4/1 4/16 13/8
13/12 15/20 16/5
18/20 19/1 21/11 22/9
25/21 27/4 27/25 28/5
28/8 28/10 28/12 29/8
30/5 30/8 30/13 30/17
31/2 31/16 31/19
32/21 33/21 36/8
36/19 40/25 41/3 42/5
**MR. WHEELER: [25]**
3/9 11/5 18/23 20/8
20/11 20/16 21/1
21/17 22/22 23/17
23/24 24/2 24/19 25/3
25/11 26/2 26/23
27/15 28/19 29/17
30/1 30/19 30/22
31/14 31/21
**MS. CARR: [1]** 28/9
**THE COURT: [56]**
**THE COURTROOM
DEPUTY: [3]** 15/21
16/3 30/24
**THE WITNESS: [2]**
16/2 16/7

**1**

**1100 [1]** 1/16
**11:41 [1]** 42/9
**11th [2]** 30/25 30/25
**15 [2]** 16/17 23/4
**18 [1]** 23/1
**1996 [1]** 13/15

**2**

**20003 [1]** 1/14
**2019 [1]** 1/5
**2021 [1]** 12/17
**2023 [2]** 3/1 42/15
**202B [2]** 1/22 42/17
**23 [1]** 16/14
**23-CR-80064 [1]**
1/2
**28 [1]** 42/15
**29 [4]** 35/9 36/4
36/17 40/14
**299 [2]** 1/22 42/17

**3**

**30 [3]** 30/18 30/20
30/23
**30th [1]** 26/6
**33301 [4]** 1/11 1/16
1/22 42/17

**37 [1]** 13/10

**4**

**456 [1]** 13/15
**49 [2]** 14/17 21/11
**499 [1]** 1/13

**5**

**500 [1]** 1/11
**517 [1]** 13/14
**5448 [1]** 42/18

**7**

**769-5448 [1]** 42/18
**7th [1]** 1/11

**8**

**80064 [1]** 1/2
**875 [3]** 32/25 37/3
37/13

**9**

**954 [1]** 42/18
**9:00 [1]** 30/25

**A**

**a.m [2]** 30/25 42/9
**able [6]** 17/5 22/1
24/10 24/12 24/12
26/24
**about [15]** 11/6 12/2
12/14 12/23 13/21
14/25 16/23 17/6 22/6
27/17 33/13 33/24
34/5 34/13 38/10
**above [1]** 42/13
**above-entitled [1]**
42/13
**absolutely [3]** 26/1
30/22 33/8
**accurate [1]** 42/12
**accurately [1]** 40/9
**acts [1]** 11/15
**actual [1]** 20/9
**actually [8]** 6/24
23/6 23/9 26/15 27/23
32/21 33/16 34/2
**addition [1]** 34/11
**additional [7]** 5/13
5/14 18/15 25/18
36/25 37/18 37/19
**address [6]** 19/6
20/11 31/24 32/2
32/17 32/19
**adequately [1]** 15/4
**adjourned [1]** 42/9
**adjudicate [1]** 32/10
**adjudicated [3]**
34/23 34/24 35/16
**admissible [1]** 35/7
**admitting [1]** 37/25
**affidavit [3]** 8/13

**28/1 28/13**
**affidavits [3]** 8/7 8/8
10/13
**after [2]** 26/13 34/4
**again [11]** 7/10 9/10
10/23 19/21 27/9
30/19 36/15 40/14
40/20 40/20 41/20
**against [2]** 8/10
8/20 12/13
**agency [5]** 6/3 10/20
10/22 22/2 22/14
**agent [8]** 3/13 3/14
31/7 31/8 34/6 41/5
41/15 41/16
**agents [3]** 7/23
10/22 34/2
**ago [2]** 39/22 39/23
**agree [2]** 8/24 29/25
**agrees [1]** 33/10
**aid [1]** 11/25
**all [32]** 3/16 3/24
3/24 4/15 9/15 11/4
12/11 14/12 14/13
15/18 18/18 18/22
18/24 19/23 22/11
22/17 25/24 26/4
26/14 29/1 30/11 31/1
31/15 32/21 34/8
34/10 35/24 38/4
39/20 40/20 41/11
42/7
**allegation [6]** 6/14
6/15 7/11 7/12 32/10
39/17
**allegations [7]**
10/17 14/4 41/6 41/6
**allege [1]** 38/1
**alleged [8]** 5/15 6/16
6/17 7/11 8/13 21/18
36/11 37/13
**alleges [3]** 28/13
37/4 39/25
**alleging [3]** 12/25
28/24 39/6
**allow [2]** 25/15
40/15
**already [2]** 14/25
37/22
**also [13]** 3/19 5/11
6/6 7/20 9/5 9/11
9/25 18/15 30/1 31/5
31/10 34/7 34/12
**although [4]** 7/12
11/14 13/18 40/4
**Amendment [12]**
29/23 32/2 32/6 33/4
34/11 34/13 35/13
36/23 36/25 37/18
39/7 39/19
**AMERICA [2]** 1/4 3/6
**amongst [1]** 29/1

**announce [1]** 3/7
**another [2]** 4/12
37/9
**answer [1]** 29/12
**anticipate [1]** 3/20
**any [10]** 18/22 25/6
28/19 29/16 32/13
35/21 36/14 37/14
37/19 39/20
**anybody [1]** 19/22
**anything [11]** 17/16
18/2 18/11 22/21
24/17 24/23 25/6 27/5
29/3 33/1 42/1
**apologies [1]** 32/3
**apparent [1]** 27/7
**apparently [3]** 5/9
8/2 25/3
**appear [2]** 8/19 15/9
**appearance [1]** 3/7
**APPEARANCES [1]**
1/9
**appearing [1]** 3/12
**appropriate [2]**
19/25 36/4
**approval [1]** 27/1
**arbitrary [1]** 12/10
**are [51]**
**area [1]** 24/10
**argue [5]** 6/13 7/7
30/9 36/16 38/8
**argued [1]** 19/3
**arguing [1]** 13/18
**argument [1]** 33/1
**Armstrong [5]** 12/16
13/13 13/20 14/20
15/3
**around [1]** 29/22
**arrest [1]** 5/17
**arrested [2]** 5/9 7/23
**article [1]** 25/3
**as [60]**
**aside [1]** 33/2
**ask [6]** 3/22 22/20
23/22 28/17 33/24
35/22
**asked [5]** 6/1 6/7
17/19 24/22 26/3
**asking [14]** 7/2 11/1
14/12 14/14 15/13
15/16 20/17 20/19
21/7 23/20 27/10
27/12 35/25 40/7
**Assessment [1]** 26/8
**assigned [1]** 16/18
**assist [1]** 16/18
**assistant [2]** 3/22
38/20
**assuming [1]** 34/7
**at [53]**
**attempt [3]** 16/21
20/23 25/14

**attempted [3]** 6/15
9/23 12/5
**attempts [3]** 9/2
10/11 18/8
**attention [1]** 8/2
**attorney [4]** 18/13
20/24 29/1 38/20
**ATTORNEY'S [1]**
1/10
**Attorneys [2]** 10/21
33/13
**AUSA's [1]** 17/25
**avoiding [1]** 15/6
**aware [3]** 10/25 15/7
25/12

**B**

**Baker [1]** 33/11
**balances [1]** 15/5
**Bank [5]** 3/14 31/7
34/6 41/15 41/16
**barb [1]** 5/1
**baseball [2]** 5/4
27/18
**based [9]** 12/9 15/15
23/10 32/25 35/6
35/22 35/23 40/18
40/25
**baseline [1]** 36/24
**basically [3]** 10/10
17/4 36/25
**basis [1]** 36/14
**bat [2]** 5/4 27/18
**be [73]**
**because [28]** 4/11
6/2 6/15 6/20 7/9
9/18 13/2 21/6 22/7
22/10 24/20 25/22
27/7 27/21 30/10 32/9
32/11 32/18 33/4 36/5
37/13 37/18 39/4 39/8
39/25 40/23 41/5
41/15
**become [1]** 37/24
**becomes [1]** 41/17
**been [23]** 4/25 5/3
6/2 7/23 8/11 9/5
11/8 11/13 11/15
11/17 11/19 12/6 13/3
13/4 13/6 16/13 16/15
29/2 29/4 30/4 34/13
34/14 38/10
**before [7]** 1/8 22/23
31/22 34/20 35/15
36/3 36/6
**beg [1]** 19/22
**behalf [4]** 3/9 3/12
3/18 32/1
**being [12]** 5/10 5/18
5/18 6/11 9/13 9/14
9/19 9/20 14/1 24/14
25/1 29/9

(1)  AGENT BANK: - being

**B**

**believe [12]** 7/13 15/11 23/4 25/5 26/6 26/8 31/4 31/8 31/9 33/21 36/21 40/2
**best [1]** 29/11
**between [2]** 7/10 7/11
**beyond [1]** 23/22
**bit [1]** 23/12
**blacked [1]** 10/10
**Blvd [4]** 1/11 1/16 1/22 42/17
**body [1]** 39/2
**bomb [2]** 5/12 7/13
**bond [4]** 8/2 8/3 8/4 10/15
**both [5]** 9/22 10/17 13/5 26/3 39/2
**bottom [1]** 24/15
**Brady [7]** 4/6 4/17 7/18 13/18 30/2 30/8 30/13
**Brady/Giglio [2]** 4/6 4/17
**bridge [1]** 41/21
**brief [8]** 4/18 4/21 6/24 14/18 17/13 36/11 37/7 38/11
**briefing [1]** 34/10
**briefs [1]** 6/25
**broken [1]** 4/18
**Broward [4]** 1/11 1/16 1/22 42/17
**bunch [1]** 23/22
**burden [5]** 9/18 9/22 11/6 11/7 15/2
**but [39]** 3/21 5/6 6/1 9/4 10/6 10/17 11/13 11/19 13/1 19/13 19/21 22/4 22/5 22/10 22/25 23/10 24/6 24/11 24/16 26/14 27/5 28/25 29/3 29/8 29/12 29/18 31/6 31/8 31/10 33/2 36/15 36/22 37/16 38/4 38/16 39/6 39/13 41/13 41/17

**C**

**C-A-R-R [1]** 16/7
**C-E-R-T-I-F-I-C-A-T-E [1]** 42/11
**call [11]** 3/4 4/7 15/18 15/20 17/20 17/21 22/13 31/4 32/5 32/15 34/4
**called [4]** 17/11 17/12 18/13 18/15
**came [4]** 8/2 8/9 23/11 24/4

27/15
**clarify [1]** 30/1
**classifications [1]** 12/11
**clear [12]** 11/8 11/11 11/13 11/19 13/5 14/25 19/21 19/23 20/17 21/5 21/5 38/10
**clearly [1]** 35/3
**co [2]** 8/3 10/15
**co-signers [2]** 8/3 10/15
**come [3]** 26/5 26/10 26/16
**commerce [1]** 37/5
**committed [1]** 11/15
**communicate [1]** 37/10
**communication [5]** 5/2 5/2 33/24 37/5 39/1
**communications [11]** 8/12 23/7 23/8 24/4 24/13 26/5 26/7 26/18 26/19 29/2 39/10
**compel [3]** 4/6 4/17 14/19
**complete [1]** 15/15
**compliance [1]** 25/25
**comply [1]** 25/16
**concerned [1]** 23/11
**concerning [9]** 23/7 23/8 24/4 24/13 26/4 26/7 26/18 26/19 29/2
**conclude [1]** 19/5
**conduct [2]** 9/14 9/21
**confer [1]** 25/7
**conferring [1]** 26/25
**confused [2]** 32/3 32/15
**Congress [1]** 38/16
**congressman [4]** 4/24 5/6 21/19 23/12
**consider [3]** 33/23 34/22 35/18
**considerations [1]** 34/22
**constitutes [1]** 33/4
**constitutional [6]** 4/13 31/4 32/19 34/21 35/5 36/24
**constitutionally [3]** 11/17 12/7 40/11
**contact [1]** 17/6 20/23 22/13 28/17
**contacted [1]** 17/10
**Containing [1]** 37/8
**context [5]** 33/9 33/17 34/1 38/11

38/25
**contextual [9]** 33/14 34/5 35/2 35/19 39/11 39/11 39/16 39/17 41/8
**continuance [1]** 25/25
**continue [1]** 25/15
**conversation [3]** 17/13 22/18 22/19
**convincing [1]** 14/25
**coordinator [1]** 3/22
**copies [2]** 8/24 10/2
**copy [1]** 38/19
**corners [7]** 34/24 35/6 35/23 36/14 36/18 36/19 40/17
**correct [1]** 30/5
**correctly [1]** 32/4
**correspondingly [3]** 11/21 11/24 12/18
**could [17]** 5/21 5/24 6/9 6/9 8/16 12/2 20/16 22/15 23/11 27/5 27/22 27/23 28/23 33/2 33/9 40/25 41/3
**counsel [15]** 3/13 3/23 8/6 8/22 9/1 9/4 10/5 10/5 10/14 10/18 15/9 17/16 22/10 27/25 36/21
**counsel's [2]** 17/17 28/3
**country [1]** 24/10
**counts [1]** 39/8
**course [4]** 5/5 23/5 23/17 36/4
**court [63]**
**Court's [4]** 4/13 29/19 31/2 40/23
**courts [4]** 12/12 33/10 34/9 38/10
**CR [1]** 1/2
**creates [1]** 36/25
**credible [3]** 15/3 19/9 24/25
**crime [2]** 12/22 40/10
**crimes [2]** 7/24 12/23
**Criminal [1]** 34/25
**critical [3]** 7/16 33/25 38/25
**cross [4]** 2/3 18/22 31/6 41/21
**cross-examination [1]** 18/22
**CRR [2]** 1/20 42/15
**currently [1]** 35/19

**D**

**date [2]** 21/24 25/12
**day [2]** 30/18 30/23
**days [2]** 20/6 25/12 25/14 30/20 34/4 39/22 39/22
**DC [2]** 1/14 38/12
**dealt [1]** 38/14
**death [1]** 21/19
**December [2]** 30/24 30/25
**decision [3]** 12/9 19/20 36/5
**declaration [1]** 23/3
**defective [1]** 40/12
**defendant [7]** 1/6 1/15 2/2 11/11 13/22 37/2 39/6
**defendant's [1]** 15/6
**DEFENDER'S [3]** 1/15 3/18 16/12
**defense [27]** 7/4 11/7 11/12 12/1 12/20 14/2 14/7 19/10 20/19 21/23 22/23 23/4 23/19 25/5 25/17 32/2 32/5 32/14 36/21 39/24 40/7 40/13 42/4
**defense's [1]** 39/22
**definitely [2]** 26/20 27/3
**delay [1]** 29/11
**delve [1]** 35/1
**deniable [1]** 34/21
**denied [4]** 23/23 35/17 40/12 40/24
**denies [1]** 29/19
**deny [4]** 36/14 36/15 41/19 41/24
**Department [2]** 5/8 38/22
**designed [1]** 33/3
**determination [2]** 35/9 41/14
**determinations [1]** 12/12
**determine [5]** 20/22 25/18 26/15 32/13 37/24
**determined [2]** 26/14 33/9
**determines [1]** 35/5
**development [2]** 32/14 34/20
**did [17]** 5/19 8/3 10/8 16/21 17/6 17/8 17/21 17/22 17/23 18/8 18/11 20/13 30/10 34/2 37/5 39/4 40/5

**bd** (column 1 continued)
**Cannon [1]** 12/16
**cannot [1]** 33/3
**CAPITOL [23]** 1/12 1/13 3/15 5/7 6/3 6/5 6/7 6/21 9/6 10/1 10/3 10/5 16/22 17/6 17/9 17/11 20/23 21/14 22/2 22/12 23/9 28/15 29/5
**Carr [10]** 3/20 7/4 8/21 9/23 9/25 10/6 15/20 16/7 16/9 16/11
**case [73]**
**cases [4]** 6/14 10/17 22/12 37/25
**cast [1]** 27/10
**cause [1]** 39/15
**cautioned [1]** 12/13
**caveat [1]** 13/24
**CBS [2]** 4/24 16/23
**certain [1]** 24/10
**certainly [5]** 12/3 27/4 28/20 28/21 29/3
**certify [1]** 42/12
**challenge [1]** 39/7
**chance [1]** 20/11
**charge [1]** 40/5
**charged [6]** 7/24 34/13 34/14 37/3 40/3 40/11
**Charles [2]** 31/8 31/9
**chase [1]** 27/13
**choose [1]** 20/4
**Christopher [1]** 1/15
**Circuit [3]** 12/14 12/17 38/13
**cite [2]** 6/24 35/11
**cited [4]** 10/23 33/11 34/9 39/23
**City [1]** 5/8
**claim [7]** 11/19 11/20 11/24 11/25 12/18 16/22 35/13
**claiming [3]** 12/1 15/8 35/19
**clarification [1]**

**can [36]** 3/22 4/14 4/17 5/23 7/5 9/22 15/14 15/18 17/1 17/9 19/6 19/16 20/15 20/21 21/3 24/6 27/5 27/16 27/21 28/18 29/8 29/13 30/13 30/16 30/20 31/3 31/11 31/16 31/21 33/8 33/17 33/23 36/15 38/25 40/22 42/7
**can't [7]** 6/18 8/18 10/15 12/9 14/6 17/14 21/25

**D**

didn't [1] 39/6
different [6] 13/19
15/4 15/9 21/2 22/3
26/19
differently [2] 9/14
9/20
direct [4] 2/3 16/9
16/21 18/8
directed [4] 17/12
17/16 27/6 28/20
directing [1] 28/22
direction [1] 26/11
directly [1] 28/18
disagree [1] 35/3
discovery [11] 4/19
11/19 11/25 12/15
12/17 13/2 13/7 13/20
13/23 14/10 14/22
dismiss [15] 4/10
4/13 7/7 9/17 11/1
31/3 31/11 32/2 32/6
34/15 34/23 35/14
36/9 38/17 40/23
dismissal [1] 19/4
dismissed [4] 32/11
39/25 40/6 40/19
disposition [1]
35/10
Dispoto [2] 1/10
3/11
district [14] 1/1 1/1
1/8 7/24 8/7 8/14
8/23 10/14 18/3 21/2
21/21 21/21 22/8 28/1
dive [1] 33/6
Division [1] 38/21
Dixon [1] 17/18
do [29] 4/14 5/22
6/13 14/11 16/2 18/11
19/4 19/16 19/22 22/1
22/9 22/17 24/17
24/17 24/25 25/1
25/13 26/9 29/6 29/14
29/15 31/16 32/18
33/16 35/17 36/7 38/8
40/5 40/20
do you [1] 38/8
docket [4] 13/12
14/17 18/16 19/17
document [6] 13/9
13/10 21/11 26/24
28/24 36/12
documents [18]
12/21 15/12 15/14
18/9 18/12 19/8 19/8
19/14 20/7 20/18
20/21 21/1 22/8 25/17
25/18 25/22 29/9
29/21
does [12] 5/15 14/9

29/21 29/23 32/13
38/3 38/4 40/9 40/10
40/13 40/17 41/16
doesn't [5] 7/3 24/23
32/9 37/14 38/1
doing [1] 27/1
don't [22] 18/2
19/12 19/19 19/20
19/24 20/2 22/1 22/5
22/6 22/25 23/13 24/6
24/16 24/17 24/25
25/14 26/23 27/20
28/14 31/19 36/5
36/15
done [3] 14/5 37/12
42/8
down [6] 4/19 8/9
18/24 19/15 24/11
28/21
downloaded [1]
8/15
during [3] 3/21 8/21
9/25
duty [1] 6/13

**E**

early [1] 41/3
East [2] 1/16 42/17
Eastern [8] 7/24 8/7
8/14 8/23 10/14 18/3
21/21 28/1
efforts [2] 17/1 22/4
eight [1] 23/6
either [6] 12/4 13/6
19/24 26/10 28/21
33/14
element [8] 36/25
37/6 37/7 37/8 37/18
37/19 38/7 39/5
elements [6] 11/23
14/1 14/1 14/7 38/5
40/10
eleven [2] 25/12
25/14
Eleventh [2] 12/14
12/17
ELLEN [3] 1/20
42/15 42/15
else [4] 10/10 15/13
22/21 42/1
email [4] 8/12 17/18
17/23 17/25
Embassy [1] 38/23
employed [2] 16/11
16/13
encompasses [1]
34/12
enforcement [4]
10/20 12/2 22/14
28/16
enforcement's [1]
12/23

enhanced [1] 7/13
entire [2] 22/20
38/11
entirely [1] 6/1
32/22
entitled [4] 13/23
14/8 35/8 42/13
entries [1] 13/9
entry [3] 13/10
13/12 14/17
especially [1] 32/14
Esq [2] 1/10 1/15
essential [4] 37/18
37/19 39/4 40/10
establish [3] 38/7
38/9 39/1
even [9] 7/3 10/8
12/4 13/4 13/7 23/5
23/6 26/18 41/22
ever [1] 39/14
everything [3] 7/4
10/10 27/10
evidence [23] 5/17
7/9 7/16 7/18 7/19
9/23 11/11 11/13 13/5
14/13 14/19 14/25
15/8 20/20 21/18
33/17 38/8 38/9 39/9
39/15 39/16 41/7 41/7
evidentiary [1] 35/2
exactly [3] 20/17
22/19 23/14
examination [2]
16/9 18/22
exclude [1] 19/15
exculpatory [3] 4/6
10/25 14/19
excuse [2] 5/1 36/23
exhibit [4] 4/22 4/22
14/14 22/23
exhibits [1] 14/13
exist [1] 12/1
exists [2] 6/19 10/12
expedition [2] 14/12
20/20
explained [2] 12/8
17/14
extensive [2] 12/2
12/23
extra [1] 23/12

**F**

face [5] 32/11 37/1
37/13 39/5 40/11
facial [1] 37/17
fact [3] 25/1 35/8
40/2
factor [1] 39/11
factors [1] 5/14
33/14 33/22 34/6 34/7
34/9 34/10 35/2 35/19
38/25 41/8

factual [5] 32/13
34/19 34/22 36/23
38/11
fails [1] 39/18
fair [2] 22/7 27/3
fairly [1] 26/24
faith [1] 6/15
familiar [1] 18/6
far [7] 14/12 19/9
20/23 27/17 27/22
28/8 41/22
fastest [1] 31/20
fear [1] 29/18
federal [7] 1/15 3/18
5/20 6/3 7/23 7/24
34/24
Fifth [3] 34/12 39/7
39/18
figure [1] 33/8
file [3] 19/14 19/25
22/20
filed [7] 8/6 8/17
18/15 21/2 27/20 30/9
39/22
filing [1] 14/14
final [1] 4/12
find [9] 5/16 5/21
5/21 5/23 7/5 17/4
22/14 40/18 41/5
finding [2] 20/14
39/15
finds [1] 19/9
fine [4] 19/12 19/25
24/15 40/21
finish [1] 6/9
first [35] 4/5 4/9
4/21 7/11 7/17 9/10
11/3 11/11 12/4 13/9
15/18 19/5 19/6 20/12
26/14 27/16 29/16
29/23 30/2 30/6 30/8
30/13 31/17 32/2 32/6
32/23 33/4 34/11
35/13 36/23 36/25
37/6 37/7 37/18 41/12
fishing [1] 20/20
Floor [1] 1/11
FLORIDA [6] 1/1 1/4
1/11 1/16 1/22 42/17
FOIA [1] 22/3
follow [1] 19/22
follows [2] 4/3 4/20
footnote [1] 39/3
foregoing [1] 42/12
forfeiting [1] 36/16
form [1] 9/11
FORT [6] 1/2 1/4
1/11 1/16 1/22 42/17
forth [1] 41/21
forward [6] 19/9

19/14 19/25 29/12
29/15 40/14
forwarded [2] 9/6
17/24
four [9] 31/4 34/8
34/24 35/6 35/23
36/14 36/18 36/19
40/17
FRANK [4] 1/6 3/6
3/18 16/19
front [2] 10/6 35/12
fully [1] 30/4
further [2] 7/12
18/20

**G**

Gabrielle [1] 22/24
garden [1] 23/20
gave [1] 10/9
general [3] 17/16
17/17 17/17
George [1] 22/25
germane [1] 23/18
get [20] 4/22 6/18
10/15 13/7 17/21
17/23 19/13 24/6 24/7
25/23 27/16 28/18
29/10 29/12 29/21
33/1 36/17 40/14
40/21 41/21
getting [1] 20/25
Giglio [4] 4/6 4/17
7/18 30/3
give [7] 13/11 16/3
21/23 21/24 24/8 24/9
30/23
given [1] 22/12
go [15] 4/10 6/5 7/5
14/17 19/15 20/4
20/14 24/22 27/12
27/22 29/12 29/15
36/3 36/17 38/10
goes [1] 37/8
going [31] 7/6 13/8
14/14 14/24 19/3 19/7
19/11 19/17 19/18
19/19 19/21 19/22
19/23 20/3 21/2 25/13
25/23 29/9 31/5 32/1
32/16 33/1 33/5 33/6
33/13 33/20 33/24
33/25 40/15 41/19
41/23
good [4] 3/5 3/11
3/17 6/15
Googled [1] 17/3
goose [1] 27/13
Gordon [1] 6/13
got [2] 18/17 39/12
gotten [1] 41/22
Government [40]
6/7 6/12 6/20 6/22

**G**

**Government... [36]**
7/1 7/2 10/19 10/20
10/24 11/2 12/25
13/16 13/24 14/9
14/22 14/24 15/7
15/12 19/7 19/15 20/7
20/8 21/3 24/3 25/11
25/16 27/12 29/10
30/3 30/10 32/1 32/8
32/22 33/5 33/10 35/7
37/12 37/22 38/18
42/3
**Government's [13]**
11/16 12/6 13/14
13/25 14/5 15/5 19/20
29/14 29/17 32/15
38/16 38/19 40/8
**grafted [1]** 37/17
**grand [6]** 37/3 37/12
39/14 41/4 41/8 41/14
**grant [1]** 25/24
**Great [2]** 16/3 28/13
**grounds [8]** 4/13
31/4 32/3 32/7 34/21
35/6 39/19 40/24
**guess [3]** 4/7 21/6
29/18
**Guillermo [1]** 31/9
**guys [1]** 19/19

**H**

**had [9]** 4/25 5/3 5/8
6/2 20/11 23/4 26/5
26/15 29/2
**half [1]** 23/1
**hand [1]** 15/22
**handle [3]** 4/3 4/9
29/24
**handled [4]** 5/18
5/18 6/11 28/17
**handling [1]** 22/15
**happened [1]** 37/16
**happening [3]** 5/23
13/16 24/17
**happens [2]** 14/9
37/2
**has [22]** 5/14 6/12
11/8 11/12 11/13
11/17 11/19 12/6 12/8
12/14 12/16 12/20
13/6 22/22 25/5 27/19
30/4 37/12 37/12
37/16 37/20 37/22
**hasn't [1]** 13/4
**have [72]**
**haven't [5]** 12/4
20/11 28/24 41/13
41/22
**having [1]** 35/25
**he [22]** 4/25 4/25 5/3
5/4 5/11 5/25 6/2 8/6

8/9 8/24 11/13 17/14
17/16 18/14 18/15
24/8 24/9 24/23 24/25
28/13 28/14 37/4
**he's [7]** 3/19 7/23
24/8 27/16 28/6 28/12
31/7
**head [1]** 5/5
**headed [1]** 34/16
**hear [1]** 25/20
**heard [1]** 20/8
**hearing [6]** 1/7
14/18 33/16 35/2
35/15 35/22
**heavily [2]** 10/8
17/15
**help [1]** 27/5
**her [4]** 9/2 17/18
17/19 31/12
**here [21]** 11/7 13/16
14/12 14/20 19/19
20/9 20/25 22/20
22/21 24/16 24/24
28/12 30/9 31/7 33/6
34/13 36/2 38/7 39/6
40/22 41/20
**here's [3]** 13/20
13/24 15/2
**hereby [1]** 42/12
**Herman [1]** 1/13
**highly [1]** 28/25
**him [7]** 11/17 12/6
21/10 24/22 24/22
28/6 33/24
**himself [1]** 6/16
**his [13]** 5/4 8/11 9/5
14/4 15/9 18/13 21/19
28/9 28/12 34/6 35/20
36/16 40/13
**Honor [59]**
**HONORABLE [3]** 1/8
1/21 42/16
**how [12]** 5/18 6/10
16/13 16/15 19/19
19/20 20/6 20/22
23/14 26/15 33/8 38/8
**However [1]** 20/2
**Hurtig [2]** 31/8 34/2

**I**

**I will [2]** 17/15
28/20
**I'd [2]** 3/22 4/8
**I'll [3]** 10/6 15/20
19/13
**I'm [20]** 7/6 13/8
13/18 14/24 19/22
19/23 21/25 22/4 25/6
32/1 32/3 33/1 33/13
33/23 34/7 39/5 39/23
40/15 41/19 41/23
**identical [1]** 35/13

**identifying [1]** 10/15
**if [61]**
**III [2]** 21/13 21/18
**imagine [1]** 9/8
**importance [1]**
25/22
**important [2]** 11/6
39/11
**importantly [2]** 8/17
39/8
**improper [1]** 13/2
**impugned [1]** 6/25
**in [159]**
**incidents [1]** 23/5
**inclined [1]** 25/15
**include [2]** 38/4 39/4
**included [3]** 8/13
8/15 21/20
**incorrect [2]** 5/24
32/22
**INDEX [1]** 1/24
**indicate [1]** 37/7
**indicated [13]** 4/18
4/21 4/25 5/3 5/7
5/12 6/2 6/12 8/4 8/9
10/12 14/13 22/11
**indicates [4]** 13/22
14/20 38/24 39/3
**indictment [22]**
7/23 8/9 32/11 34/15
34/24 35/6 35/7 35/23
36/9 36/19 36/20 37/4
38/3 38/6 39/3 39/10
39/13 39/18 39/24
40/3 40/6 40/8
**individual [5]** 7/10
7/14 9/13 9/21 23/3
**individuals [4]** 9/19
15/10 23/1 26/9
**individuals' [1]** 36/6
**information [18]** 4/17
4/17 6/18 6/19 6/24
7/3 7/5 7/6 7/20 9/3
9/11 9/16 10/11 10/24
17/2 28/12 39/17 41/3
**initial [5]** 11/12 12/4
25/17 26/9 26/12
**initially [2]** 11/5
17/11
**injure [1]** 37/9
**instructed [1]** 17/18
**instruction [2]** 8/22
37/6
**instructions [1]**
19/22
**intend [1]** 19/13
**intent [1]** 37/10
**intentionally [1]**
37/4
**interest [4]** 15/5
15/6 23/12 26/11
**interstate [1]** 37/5

**interview [5]** 4/24
5/7 5/25 34/2 34/3
**into [6]** 4/10 6/7
19/3 23/13 33/6 35/1
**investigated [2]** 5/8
10/4
**investigating [2]** 9/8
24/16
**investigation [5]**
5/17 6/3 7/15 26/13
34/6
**investigations [5]**
12/3 12/24 21/15
21/23 22/15
**investigative [1]**
17/3
**investigator [5]**
3/20 8/21 9/25 16/15
16/18
**invidious [2]** 11/18
12/7
**involved [2]** 10/20
22/14
**irrelevant [1]** 8/5
**is [144]**
**issue [11]** 14/16
14/20 22/21 23/19
23/21 32/18 33/6 33/7
34/11 38/14 39/23
**issues [3]** 23/21
32/12 34/13
**it [75]**
**it's [22]** 3/19 4/3
6/22 6/25 11/6 21/9
21/9 22/10 26/23 29/9
34/12 34/14 35/1 35/4
35/7 35/18 37/19
37/21 39/1 40/8 40/16
41/23
**its [16]** 32/10 33/17
37/13 38/4 39/5 40/11
**itself [5]** 11/24 13/7
32/20 37/21 40/3

**J**

**Jan [2]** 1/15 3/17
**January [1]** 26/6
**January 30th [1]**
26/6
**Jencks [4]** 41/3
41/14 41/17 41/24
**Joe [1]** 3/9
**Joseph [6]** 1/13 28/9
28/10 28/18 28/20
29/4
**Joshua [1]** 3/14
**journalist [1]** 25/5
**judge [10]** 1/8 31/21
34/17 35/13 35/15
39/2 39/21 40/4 41/12
41/18
**juncture [2]** 35/1

41/18
**jury [14]** 34/21
34/22 35/4 35/18
35/18 36/3 37/3 37/6
37/12 39/14 40/5 41/4
41/9 41/14
**just [20]** 6/10 7/4
9/10 14/15 15/12 20/2
20/13 20/13 21/5 23/5
26/3 26/11 27/6 27/14
27/19 30/1 31/21
32/15 37/23 39/5
**Justice [1]** 38/22
**justification [1]**
11/22

**K**

**Kay [6]** 35/12 36/10
36/21 36/22 40/2 40/2
**keenly [1]** 25/11
**keep [1]** 10/14
**kind [3]** 12/15 23/13
34/19
**kinds [1]** 35/19
**know [18]** 19/19
22/1 22/5 22/7 22/9
22/18 22/25 23/13
24/6 24/16 24/17
24/25 25/1 25/14
27/20 28/8 28/14
30/21
**knowingly [1]** 37/5
**knowledge [1]**
37/10
**known [2]** 38/21
38/23
**Kyles [2]** 6/24 10/23

**L**

**language [3]** 37/17
38/4 40/9
**last [1]** 16/5
**LAUDERDALE [6]**
1/2 1/4 1/11 1/16
1/22 42/17
**law [6]** 10/20 12/2
12/23 22/13 23/10
28/16
**lawyer [2]** 8/14 14/4
**lead [1]** 10/5
**least [4]** 24/3 24/7
25/16 26/19
**left [4]** 5/6 18/14
18/14 18/17
**legal [3]** 32/12 32/18
33/18
**legislative [1]** 22/2
**less [1]** 26/16
**let [5]** 4/22 5/1 15/20
30/21 32/22
**Let's [1]** 18/3
**letter [2]** 23/11

**L**

letter... [1] 37/24
letters [1] 23/15
Libya [1] 38/23
Libyan [1] 38/22
lies [1] 11/7
light [1] 25/25
like [6] 9/10 19/3
20/2 24/13 27/22 39/5
likely [2] 27/1 28/25
line [1] 24/15
lingering [1] 19/12
Lipsky [1] 22/24
list [1] 14/14
litany [1] 24/12
little [2] 23/12 32/15
locate [1] 16/22
long [2] 16/13 16/15
look [23] 6/7 19/11
20/21 22/17 23/10
23/13 25/17 26/4
26/10 26/12 26/14
26/17 29/3 35/24
36/13 36/20 37/6 38/6
38/16 38/25 39/9
39/21 40/13
looking [11] 5/16
10/2 21/14 21/25
22/19 24/9 24/9 24/12
27/6 27/16 34/7
looks [2] 27/22
40/17
lose [1] 36/15
lot [1] 23/1
love [2] 23/11 23/15
Lovett [4] 31/10
31/19 33/21 33/22
low [1] 13/4
lowercase [2] 21/12
21/13
lying [1] 25/5

**M**

made [15] 6/14 9/2
10/11 10/25 12/3 15/7
16/22 20/14 20/23
21/19 24/21 25/1
35/14 39/25 41/13
mails [1] 8/12
main [1] 17/11
make [10] 12/5 18/8
22/4 24/22 25/13
29/23 33/14 33/17
36/5 40/25
makes [1] 34/20
making [3] 26/25
27/17 40/3
mandates [1] 34/25
mandatory [2] 33/9
33/18
many [6] 20/6 21/7
23/9 23/14 26/13

26/15
map [1] 32/23
Mark [2] 1/10 3/11
material [3] 30/3
34/5 41/24
materialized [1]
29/15
materials [2] 14/5
14/22
matter [2] 19/10
42/13
may [23] 3/25 4/15
4/24 6/17 10/22 12/24
12/24 13/25 14/6
16/23 18/24 20/8 22/1
23/10 24/10 25/7
26/13 26/16 29/11
29/21 30/3 31/24
34/17
may be [3] 24/10
26/13 29/11
maybe [2] 24/13
27/15
me [21] 3/20 3/23
4/14 4/22 5/1 5/1
9/23 13/11 16/18
17/12 17/16 17/18
17/24 19/3 21/7 25/20
26/24 28/16 30/21
32/23 36/23
mean [1] 5/24
meeting [1] 9/22
member [2] 28/22
38/15
member's [1] 26/20
members [3] 8/11
21/20 26/20
mentioned [1] 11/12
mere [1] 12/11
message [2] 5/6
18/14
messages [1] 18/17
met [4] 12/21 13/3
13/4 20/25
might [2] 37/23
37/23
misunderstanding
[1] 27/23
moment [3] 14/24
25/8 31/21
Monique [4] 3/20
16/6 16/7 16/9
month [3] 23/5 23/6
23/6
moot [1] 30/6
mooted [1] 30/4
more [7] 4/7 8/16
8/19 21/8 27/21 36/4
39/8
morning [4] 3/1 3/5
3/11 3/17
most [1] 22/25

**motion [74]**
motions [6] 4/2 4/11
19/2 19/25 29/7 42/5
move [6] 19/9 19/13
19/25 31/3 40/14
41/20
moving [1] 13/17
Mr [10] 15/19 18/13
28/20 29/4 31/19
32/17 33/21 33/22
34/3 35/19
Mr. [2] 25/8 36/16
Mr. Stanzione [1]
36/16
Mr. Wheeler [1]
25/8
Ms. [6] 7/4 9/23 10/6
15/20 16/11 40/2
Ms. Carr [5] 7/4 9/23
10/6 15/20 16/11
Ms. Kay [1] 40/2
multiple [4] 7/24 8/2
8/7 38/15
multitude [2] 21/19
34/9
Murray [7] 18/13
28/5 28/9 28/10 28/18
28/20 29/4
must [4] 15/11 33/8
33/9 34/23
my [12] 3/19 3/21
4/12 7/4 8/22 19/17
19/22 25/4 29/18 32/3
33/1 38/11
myself [1] 7/5

**N**

name [7] 16/4 16/5
16/5 22/23 26/20 28/3
28/9
names [3] 21/23
22/9 26/20
narrow [2] 22/21
23/21
narrowed [1] 27/10
narrowly [2] 22/19
27/14
National [1] 38/21
nature [1] 22/16
Naysa [1] 31/10
necessarily [2] 22/5
36/13
necessary [2] 8/4
38/5
Neck [1] 28/13
need [7] 15/15 26/21
29/6 30/15 32/10
32/13 32/18
needed [1] 17/14
needs [2] 11/20
34/23
net [1] 27/10

never [2] 9/2 18/17
New [20] 5/8 5/10
5/20 5/20 7/25 8/8
8/14 8/23 9/1 10/3
10/3 10/12 10/14
16/23 18/3 21/21
27/17 28/1 28/13
28/25
news [6] 4/24 6/16
8/2 16/23 24/21 25/3
next [4] 7/7 17/19
19/3 27/8
no [22] 1/2 5/23
6/13 17/22 17/24
18/19 18/20 18/23
21/9 24/22 25/4 25/21
27/12 31/9 35/15 38/6
39/16 39/17 41/5 41/6
41/7 42/2
nobody [1] 18/18
none [3] 13/2 13/6
24/13
normally [1] 28/21
not [78]
nothing [4] 15/13
20/25 39/13 42/2
nothing's [1] 24/17
notice [2] 6/23 18/14
November [3] 1/5
3/1 42/15
now [17] 4/17 5/24
7/19 13/24 19/11
24/11 24/16 24/24
25/12 29/7 29/22 30/4
33/5 36/10 38/3 38/11
39/2
number [9] 4/22
6/10 13/1 13/10 17/11
18/14 18/16 18/16
41/22
numeral [4] 21/13
21/13 21/17 21/17
numerous [3] 6/25
8/17 10/23

**O**

object [2] 32/9 35/21
objection [1] 25/21
obligation [1] 41/17
obtain [7] 9/3 9/24
10/11 14/6 17/2 18/8
18/11
obviously [11] 5/11
6/15 7/16 7/23 9/16
10/3 11/7 22/10 23/16
41/10 41/16
occurred [1] 7/15
occurring [1] 12/24
offer [1] 34/5
office [15] 1/10 1/15
3/18 16/12 16/16
17/17 17/25 22/24

22/25 23/2 24/4 24/8
26/5 28/22 35/12
officer [2] 3/13
28/21
offices [2] 23/1 23/8
Official [2] 1/21
42/16
okay [10] 3/19 4/3
4/14 18/3 18/20 28/11
31/13 37/1 37/20
40/24
on [73]
once [4] 6/14 6/23
9/10 17/17
one [17] 1/16 4/12
7/12 9/12 9/17 23/3
24/22 25/8 26/16
27/12 27/16 27/19
27/22 27/23 33/22
38/24 39/6
ones [1] 27/7
ongoing [1] 12/3
only [7] 21/9 21/9
26/16 31/11 32/24
33/8 37/13
open [1] 27/13
opinion [1] 39/3
opportunity [1]
41/20
oppose [2] 41/13
41/18
opposed [1] 40/1
or [34] 4/23 5/11
5/12 5/25 8/12 9/8
9/14 9/20 12/10 12/12
12/23 12/24 13/7
15/14 17/20 19/4
20/22 21/15 22/13
22/20 24/25 25/5
26/11 26/16 28/22
29/15 32/13 33/14
34/12 36/23 39/15
39/22 40/23 41/6
order [7] 3/4 4/2 7/2
11/2 15/11 25/13
25/16
ordered [2] 29/9
42/6
ordinarily [2] 13/23
14/10
organization [1]
6/17
organizations [1]
8/3
other [14] 4/8 5/11
12/10 12/22 12/13
17/4 19/2 26/17 29/2
29/7 32/19 33/12
33/12 38/14
others [1] 11/14
our [18] 4/18 4/21
6/1 6/9 6/24 8/15

## O

**our... [12]** 9/22 13/9
14/13 14/17 15/15
16/15 19/1 34/10
36/11 36/11 37/6 42/5
**ourselves [5]** 6/18
7/5 9/3 9/24 14/6
**out [9]** 8/22 9/19
10/1 10/10 11/13
22/14 32/23 33/8
38/12
**outline [1]** 40/10
**outside [1]** 29/4
**outstanding [2]** 4/5
4/8
**over [17]** 6/9 7/3
10/7 11/2 14/10 15/12
19/8 19/12 19/14 20/7
20/13 20/17 23/5
25/18 31/6 41/17
41/25

## P

**P-R-O-C-E-E-D-I-N-G-S [1]** 3/2
**Pacer [1]** 17/4
**page [2]** 13/12 14/19
**papers [2]** 35/16
35/23
**paperwork [1]** 8/5
**part [4]** 8/9 20/12
27/13 35/17
**partially [1]** 21/20
**particular [10]** 4/9
8/20 15/14 21/6 22/12
22/25 23/21 24/8
29/11 40/16
**parties [2]** 3/7 35/3
**partner [1]** 5/4
**pass [1]** 18/21
**past [1]** 12/13
**path [1]** 19/16
**Patricia [1]** 30/23
**pause [2]** 14/24
25/10
**pending [2]** 4/2
25/25
**people [3]** 22/6
26/25 42/8
**perhaps [6]** 8/3 9/13
9/20 27/5 28/18 39/5
**permissible [1]**
32/25
**permission [1]** 31/3
**permits [1]** 37/13
**perplexed [1]** 36/1
**person [4]** 5/9 7/15
23/13 37/9
**personal [1]** 12/12
**personally [1]** 17/24
**persons [1]** 15/4
**phone [1]** 34/4

**piece [3]** 7/19 9/10
13/7
**pieces [2]** 4/19 9/23
**places [1]** 38/18
**Plaintiff [2]** 1/4 1/10
**pleadings [4]** 9/5
33/12 33/12 38/16
**please [3]** 15/21
20/16 31/22
**point [13]** 6/19 13/6
13/9 19/13 32/8 35/3
36/4 36/7 36/17 40/15
40/21 41/20 41/23
**POLICE [22]** 1/12
3/15 5/7 5/8 6/3 6/6
6/7 6/21 9/6 10/2
10/4 10/5 16/22 17/6
17/9 17/11 20/24
21/14 22/2 22/12 23/9
28/15
**portion [2]** 7/11
15/14
**position [4]** 25/20
29/14 35/20 40/8
**possession [9]** 6/20
6/21 6/22 6/25 10/19
10/24 13/25 14/5 15/8
**possible [3]** 6/1
25/22 26/23
**possibly [3]** 9/8 9/13
12/22
**PPP [1]** 22/23
**predicament [1]**
24/24
**prefers [1]** 19/5
**premature [1]** 41/23
**present [3]** 3/12
3/19 38/8
**presentation [1]**
4/12
**presented [5]** 12/21
25/6 35/8 39/14 41/7
**preserve [2]** 40/20
40/22
**presumably [1]** 9/7
**previously [1]** 29/2
**probable [1]** 39/15
**procedural [1]** 4/7
**Procedure [1]** 34/25
**proceed [11]** 3/25
19/21 20/1 20/22 29/6
29/8 29/18 29/19
29/23 31/13 42/6
**proceeding [3]** 4/14
20/4 42/9
**proceedings [3]**
32/5 32/16 42/13
**process [1]** 26/2
**produce [1]** 14/22
**progress [1]** 22/16
**prong [6]** 7/17 11/16
12/4 12/5 13/4 13/17

**prongs [1]** 11/10
**proof [2]** 11/7 13/25
**proper [2]** 36/6
40/16
**properly [2]** 34/14
40/10
**property [1]** 8/4
**propose [2]** 4/3 4/8
**proposition [1]**
39/24
**prosecute [2]** 12/9
19/19
**prosecuted [10]**
5/10 7/16 9/14 9/14
9/20 9/20 11/15 33/3
35/12 38/22
**prosecution [39]**
4/11 5/17 5/21 5/23
6/4 6/8 7/8 7/17 8/21
9/8 9/17 10/1 10/21
11/1 11/9 11/14 11/17
11/18 11/20 11/23
12/6 12/18 13/17
13/23 14/2 14/2 14/7
14/11 14/23 15/1 15/5
15/6 15/15 19/4 23/20
31/6 31/11 32/24
32/25
**prosecutions [2]**
21/15 37/25
**prove [2]** 15/16 41/9
**proven [1]** 14/3
**provide [6]** 8/24
17/15 19/7 19/24
25/16 26/19
**provided [2]** 12/11
27/5
**proving [2]** 9/18
39/11
**PUBLIC [3]** 1/15
3/18 16/12
**pure [1]** 33/4
**purely [1]** 32/19
**purposes [1]** 15/10
**put [2]** 6/23 33/17

## Q

**question [1]** 19/20
**questions [3]** 18/21
32/20 33/24
**quickly [2]** 13/17
22/15
**quote [4]** 6/16 13/13
14/19 30/2

## R

**Raise [1]** 15/21
**raised [2]** 36/21
36/22
**ran [1]** 5/19
**RASSIE [3]** 1/20
42/15 42/15

**rather [1]** 36/16
**reached [3]** 8/22
10/1 17/17
**reaching [1]** 14/12
**reaction [2]** 33/23
33/25
**read [3]** 5/1 28/24
35/24
**ready [2]** 29/17
31/13
**really [4]** 4/19 6/10
27/6 34/3
**reason [3]** 11/22
25/4 38/13
**reasonable [1]** 27/3
**receipt [1]** 9/7
**receive [2]** 12/21
12/23
**recent [1]** 35/11
**recently [1]** 12/17
**recipient [1]** 33/23
**record [3]** 3/8 5/23
16/4 28/4
**recorded [1]** 37/11
**records [7]** 6/8 9/24
10/8 17/12 17/13
17/14 21/15
**RECROSS [1]** 2/3
**Red [1]** 27/13
**redacted [3]** 10/9
17/15 26/21
**redacting [1]** 19/17
**REDIRECT [1]** 2/3
**reference [6]** 6/17
13/19 16/21 16/22
19/2 33/13
**referral [1]** 28/17
**referred [5]** 6/2
22/12 28/14 34/10
38/11
**referring [2]** 13/14
23/15
**regarding [1]** 33/7
**related [4]** 4/11 5/12
14/22 21/18
**relates [1]** 32/6
**relating [1]** 29/10
**relation [1]** 7/6
**release [2]** 22/4
22/20
**released [2]** 8/1
24/6
**relevant [5]** 7/20 8/5
8/8 9/16 23/19
**religion [1]** 12/10
**relook [1]** 29/22
**remain [1]** 15/21
**remainder [1]** 19/1
**remains [1]** 41/15
**remember [2]** 24/20
27/9
**repeat [1]** 20/14

**repeated [2]** 39/1
39/10
**repeatedly [3]** 8/11
37/17 38/12
**reply [2]** 6/12 33/11
**report [2]** 26/5 30/18
**reported [3]** 1/20
29/2 29/4
**Reporter [2]** 1/21
42/16
**reports [11]** 10/2
10/18 12/1 12/2 12/23
13/1 16/22 17/6 24/3
24/7 26/9
**representative [22]**
4/23 5/24 7/22 8/1
8/6 8/10 8/10 8/20
8/23 9/4 10/12 10/13
10/18 14/4 15/8 16/23
18/13 22/11 24/5
24/20 27/25 33/25
**represented [1]** 9/5
**representing [1]**
28/6
**request [10]** 17/19
29/16 30/2 30/6 40/25
41/3 41/13 41/18
41/19 41/24
**requested [2]** 19/8
20/19
**requesting [2]** 20/6
25/19
**require [4]** 11/24
19/7 21/3 32/13
**required [5]** 13/3
15/3 34/15 35/17 40/4
**requirement [2]**
14/21 40/5
**requires [1]** 12/8
**research [1]** 6/10
**reset [1]** 30/15
**resistance [1]** 20/25
**resolve [1]** 32/20
**respect [2]** 32/22
35/3
**respond [2]** 30/10
34/17
**responded [4]** 9/2
10/5 18/18 30/6
**response [13]** 8/6
11/4 13/8 17/23 17/25
18/1 18/17 36/8 38/17
38/18 38/20 39/20
41/11
**responsive [3]** 13/1
24/12 30/4
**resulting [1]** 21/16
**returned [1]** 39/15
**reveal [2]** 13/25 14/7
22/15
**review [1]** 37/23
**right [29]** 3/16 3/24

**R**

**right... [27]** 3/24
4/15 11/4 15/18 15/22
18/18 18/22 18/24
19/23 21/11 24/11
24/22 25/2 25/13
25/24 29/9 30/11 31/1
31/15 33/5 35/24
36/10 36/16 39/20
40/13 41/11 42/7
**rights [1]** 40/20
**rigorous [2]** 11/21
11/23 11/24 12/19
**RMR [2]** 1/20 42/15
**RMR-CRR [2]** 1/20
42/15
**RODNEY [3]** 1/8
1/21 42/16
**Roman [4]** 21/12
21/13 21/17 21/17
**romance [1]** 37/24
**Room [2]** 1/22 42/17
**Rosenberg [2]** 35/13
35/16
**route [1]** 20/5
**rule [6]** 34/25 35/9
35/22 36/4 36/16
40/14
**rules [1]** 22/3
**ruling [2]** 33/18 41/1
**Ruth [1]** 17/18

**S**

**S-Y-R-I-N-G [1]**
38/12
**said [9]** 3/25 12/16
12/17 13/20 17/14
17/19 20/6 37/22 39/6
**same [8]** 5/19 9/21
10/19 10/22 10/22
11/15 12/13 36/10
**Santos [21]** 4/24
5/24 7/22 8/1 8/10
8/10 8/20 8/23 9/1
9/4 10/12 10/18 14/4
15/9 16/23 22/11
22/25 24/5 24/21
27/25 33/25
**Santos' [5]** 8/6 8/14
10/13 18/13 20/24
**say [10]** 19/18 20/3
24/13 24/23 26/10
29/22 30/19 36/8
37/14 41/6
**saying [3]** 21/7
21/25 22/4
**says [5]** 15/2 21/18
37/4 37/14 39/14
**scheduled [1]** 25/12
**screen [1]** 33/22
**Sea [1]** 27/13
**seal [5]** 8/18 12/22

**sealed [6]** 8/24
10/13 18/9 21/20 22/7
28/14
**search [2]** 5/20
15/15
**second [12]** 4/6 4/16
11/16 12/5 13/4 13/11
13/17 14/18 27/19
27/22 27/23 37/8
**secondly [1]** 41/13
**section [9]** 6/5 6/6
6/21 9/6 17/12 17/13
26/8 28/17 32/24
**Security [1]** 38/21
**see [12]** 5/18 5/21
6/10 8/16 8/18 8/24
9/22 10/9 14/19 17/16
36/11 38/19
**seeing [1]** 39/23
**seeking [8]** 6/23
7/19 7/21 9/11 24/1
27/9 30/9 32/5
**seeks [1]** 32/14
**seem [2]** 22/13
28/16
**seen [1]** 41/15
**selective [27]** 4/11
7/7 7/17 8/21 9/17
10/1 11/1 11/8 11/17
11/18 11/20 11/23
12/6 12/18 13/17
13/22 14/1 14/2 14/7
14/11 14/22 15/1 15/6
19/4 23/19 31/6 31/11
**sense [1]** 29/23
**separate [6]** 18/16
21/4 22/8 22/8 23/4
38/24
**session [2]** 3/1 3/5
**set [2]** 30/16 30/20
**she [15]** 3/20 3/22
8/22 9/1 10/1 17/18
17/19 23/3 23/4 31/10
35/16 35/17 38/22
38/24 40/4
**she had [1]** 23/4
**she'll [1]** 10/6
**She's [1]** 22/24
**shift [1]** 18/3
**Short [1]** 25/10
**should [7]** 32/11
36/17 39/24 40/12
40/14 40/18 40/21
**shouldn't [1]** 41/6
**show [2]** 11/11 15/9
**showing [5]** 11/12
12/4 12/5 15/3 19/9
**signers [2]** 8/3 10/15
**similar [7]** 5/2 5/5
5/13 7/14 9/12 27/12
38/14

**similarities [1]** 7/10
**similarity [1]** 27/7
**similarly [8]** 7/9
9/12 9/19 11/14 15/4
15/10 27/11 40/3
**simply [7]** 11/12
12/20 13/1 23/11
27/19 29/11 39/3
**since [3]** 8/9 26/5
27/20
**single [2]** 39/23 40/6
**singled [1]** 11/13
**sir [3]** 24/18 31/25
34/18
**sit [1]** 3/22
**sites [1]** 17/3
**sitting [1]** 24/16
**situated [6]** 7/9 9/13
9/19 11/14 15/4 15/10
**six [11]** 22/5 22/6
24/3 24/7 26/17 26/19
27/17 27/23 28/14
28/18 29/1
**Sixth [3]** 34/13 39/7
39/19
**slew [1]** 20/20
**smash [1]** 5/4
**SMITH [9]** 1/8 1/15
1/21 3/17 6/14 15/19
32/17 35/19 42/16
**so [68]**
**some [7]** 7/3 8/12
13/25 14/12 15/14
26/17 29/10
**somebody [2]** 5/3
5/9
**someone [1]** 27/17
**something [8]** 7/4
19/18 20/21 21/3
24/18 27/21 33/14
36/3
**somewhat [1]** 36/1
**somewhere [1]**
28/25
**sounds [1]** 21/7
**source [1]** 22/18
**South [1]** 1/13
**SOUTHERN [1]** 1/1
**span [3]** 23/6 23/6
24/8
**speak [1]** 17/20
**Special [4]** 3/14 31/7
31/8 34/6
**specific [2]** 13/1
21/24
**speculation [1]**
12/12
**speech [1]** 33/4
**spell [1]** 16/5
**spelling [1]** 16/4
**spoke [1]** 17/18
**staff [4]** 8/11 21/20

26/20 28/22
**staffer [1]** 22/24
**stage [2]** 32/5 32/16
**standard [14]** 11/6
11/18 11/20 11/24
12/10 12/14 12/19
12/21 13/5 13/5 13/19
20/9 20/14 27/8
**standards [2]** 11/23
13/3
**standing [1]** 15/21
**STANZIONE [6]** 1/6
3/6 3/18 16/19 34/3
36/16
**start [4]** 19/3 24/18
31/19 31/22
**stash [1]** 25/17
**state [1]** 5/20
**statement [3]** 4/23
26/25 27/17
**statements [3]**
24/21 24/23 25/1
**states [17]** 1/1 1/4
1/8 1/10 1/12 3/6
3/10 3/12 3/15 13/13
13/15 21/21 23/9
27/19 33/12 35/12
38/20
**stating [2]** 29/1
35/17
**status [5]** 30/16
30/18 30/20 30/23
30/24
**statute [5]** 37/1
37/14 37/14 37/17
40/9
**statutory [1]** 38/4
**STENOGRAPHICALL
Y [1]** 1/20
**step [5]** 9/17 14/1
14/1 15/16 18/24
**steps [1]** 17/19
**still [7]** 4/5 4/8 7/20
28/6 36/15 36/15
41/20
**Street [1]** 1/13
**strictly [2]** 27/11
36/17
**striking [3]** 7/10
27/7 27/11
**strikingly [5]** 5/2 5/5
5/13 7/14 15/10
**sub [1]** 21/17
**subcategory [1]**
21/12
**subheading [1]**
21/12
**subject [4]** 4/25
12/18 22/3 35/8
**submission [3]** 8/16
21/20 40/18
**submit [1]** 23/8

**submitted [4]** 4/22
8/13 10/14 23/4
**subsequent [1]** 7/22
**substantial [1]** 8/19
**substantially [1]**
9/21
**such [3]** 10/8 11/25
12/10
**sufficient [3]** 24/2
25/14 26/3
**suggesting [1]** 25/6
**Suite [1]** 1/16
**summing [1]** 12/15
**supplied [3]** 13/6
23/3 24/7
**supply [2]** 24/3
26/24
**support [4]** 4/18 8/4
36/11 39/24
**supporting [1]** 14/18
**supports [1]** 35/20
**Supreme [6]** 11/8
11/19 12/8 12/15
13/13 37/16
**Sure [5]** 20/10 25/9
31/18 31/23 41/2
**SW [1]** 1/13
**sworn [2]** 16/1 28/13
**Syring [3]** 38/12
34/14 39/2

**T**

**table [2]** 3/13 3/23
**tailor [1]** 22/19
**tailored [3]** 14/15
15/12 27/14
**take [2]** 27/5 29/9
**taking [1]** 36/2
**talk [2]** 11/6 33/13
**talked [2]** 12/14
20/24
**talking [2]** 14/25
22/6
**TAS [8]** 6/5 6/21 9/6
10/4 22/12 26/8 28/15
28/17
**task [1]** 28/23
**team [1]** 7/4
**tell [5]** 17/1 17/9
19/13 21/10 42/7
**telling [1]** 7/4
**ten [2]** 23/5 23/5
**term [1]** 33/3
**terrorism [1]** 38/23
**test [2]** 11/9 11/10
**testify [9]** 8/21 9/1
9/25 10/6 33/20 34/9
40/15 41/15 41/16
**testifying [3]** 3/21
41/4 41/7
**testimonial [2]**
35/15 35/21

**T**

**testimony [7]** 32/10 36/1 36/2 36/9 40/22 41/4 41/14

**than [7]** 4/7 5/11 15/13 21/8 26/17 27/21 38/15

**Thank [12]** 3/24 4/1 4/16 16/3 18/20 18/24 20/16 29/6 30/15 31/1 42/7 42/8

**that [254]**

**that's [35]** 4/5 5/25 6/6 7/17 8/5 11/2 11/18 15/1 15/16 15/16 19/12 19/18 19/24 20/3 21/16 24/15 25/4 26/11 26/24 27/2 27/7 27/11 27/12 30/4 30/5 32/8 33/18 33/25 34/15 35/4 35/25 36/3 37/6 37/7 38/7

**their [12]** 5/5 6/12 9/14 15/8 17/12 20/19 20/22 23/1 23/19 33/11 38/17 38/18

**them [30]** 4/3 6/23 8/16 9/8 10/9 10/16 10/25 14/6 14/8 15/14 17/21 17/23 17/24 19/24 21/16 22/20 23/9 23/10 24/3 24/9 24/11 24/13 25/17 26/10 26/15 28/22 29/10 29/13 31/20 37/24

**then [12]** 4/12 6/5 6/9 6/9 7/16 14/9 17/12 26/17 30/12 37/8 41/9 41/10

**there [31]** 4/2 5/12 7/10 8/17 9/18 9/19 10/7 12/25 14/3 14/24 16/13 19/9 22/3 26/8 26/8 26/16 26/16 27/21 28/2 30/8 35/15 37/25 38/6 38/24 39/9 39/13 39/16 41/5 41/6 41/7 41/21

**there's [12]** 7/9 11/9 13/24 22/23 23/12 25/18 27/15 36/14 38/13 39/17 40/6 41/21

**therefore [6]** 6/22 14/8 22/3 33/10 39/18 40/11

**Thereupon [1]** 42/9

**these [22]** 8/19 9/5 9/7 9/11 9/23 9/24 12/1 14/6 14/13 15/15 22/7 24/21 24/22 28/14 29/21 32/19 33/13 33/18 34/8 36/5 37/23 40/15

**they [36]** 6/8 6/12 9/7 10/7 10/8 10/8 10/9 12/3 12/4 14/10 17/12 17/20 17/20 19/14 19/16 20/21 20/23 20/24 21/24 21/24 22/7 23/11 23/21 26/10 26/10 28/15 29/21 31/6 33/11 33/13 33/19 34/4 37/23 37/23 39/12 39/22

**they'll [1]** 17/20

**they're [15]** 20/19 20/24 21/7 21/10 21/25 22/6 23/15 23/18 23/20 23/25 24/1 25/18 27/9 28/24 37/25

**they've [1]** 12/11

**thing [1]** 19/23

**things [7]** 14/15 14/15 17/4 23/22 27/11 41/12 41/22

**think [16]** 4/17 7/18 7/20 11/5 15/3 22/6 24/11 26/23 27/2 28/25 29/23 31/6 31/19 40/16 41/9 41/23

**third [1]** 7/19

**this [148]**

**those [47]**

**though [2]** 26/21 27/19

**threat [52]**

**threatened [4]** 5/3 5/4 8/11 37/4

**threatening [1]** 39/10

**threats [30]** 8/12 8/13 8/17 8/19 8/25 9/5 9/7 9/12 10/19 21/6 21/19 22/5 22/16 23/10 23/18 24/14 26/13 26/14 26/15 26/18 27/20 27/21 28/15 28/19 32/11 32/12 33/1 38/1 38/1 39/9

**three [7]** 4/2 26/8 38/18 38/24 39/8 39/22 42/5

**threshold [3]** 14/21 15/3 15/17

**through [5]** 5/20 5/20 6/5 17/3 35/2

**THURSDAY [1]** 3/1

**thus [2]** 19/9 20/23

**tie [1]** 19/17

**time [10]** 19/18 24/8 29/10 29/19 36/6 38/22 40/22 40/23 40/23 41/25

**times [2]** 10/24 38/24

**today [14]** 4/2 11/13 14/14 27/16 28/6 29/13 29/15 29/19 29/24 30/9 32/6 32/16 33/6 40/7

**told [1]** 24/22

**Torres [2]** 31/9 34/2

**towards [3]** 9/22 10/25 34/1

**track [4]** 24/11 28/20 38/3 40/9

**transcription [1]** 42/13

**transmit [1]** 37/5

**treatment [2]** 15/4 15/9

**triage [1]** 26/9

**trial [7]** 20/1 20/4 25/12 36/3 36/17 41/16 41/16

**tried [2]** 6/19 14/6

**trier [1]** 35/8

**trigger [1]** 14/21

**troubling [1]** 39/4

**true [29]** 32/12 32/25 33/2 33/3 33/7 33/7 33/14 33/15 34/3 34/5 34/7 34/10 34/12 35/4 37/14 37/20 37/21 38/1 38/2 38/7 38/9 39/1 39/5 39/12 39/16 39/17 40/1 40/5 41/8

**truth [1]** 5/25

**try [6]** 9/2 17/2 18/8 18/11 24/10 26/17

**trying [1]** 17/4

**turn [11]** 6/9 7/3 10/7 11/2 14/10 15/12 19/12 20/7 20/17 29/21 41/17

**turned [1]** 41/24

**turning [1]** 19/14

**two [21]** 4/8 4/11 4/19 11/9 13/9 14/15 14/15 19/2 19/8 20/18 20/21 21/9 21/9 21/15 26/16 27/6 27/11 34/4 39/8 39/22 41/12

**type [2]** 35/21 36/2

**typically [1]** 28/21

**U**

**U.S [6]** 5/7 6/5 9/6 10/21 28/15 38/23

**ultimate [1]** 35/9

**ultimately [1]** 40/4

**unable [1]** 5/22

**under [16]** 6/13 6/13 6/24 7/18 7/21 8/18 10/23 12/22 21/2 21/12 21/17 22/10 27/20 32/24 33/4 40/16

**understand [4]** 21/6 26/22 27/2 32/4

**understanding [1]** 25/4

**Understood [2]** 23/24 30/22

**undertake [1]** 26/2

**undertook [1]** 17/1

**UNITED [16]** 1/1 1/4 1/8 1/10 1/12 3/6 3/9 3/12 3/14 13/13 13/14 21/21 23/9 33/12 35/11 38/20

**unjustifiable [1]** 12/10

**unless [2]** 13/24 35/5

**unreasonable [1]** 23/25

**unredacted [1]** 26/24

**unseal [1]** 21/3

**until [1]** 29/11

**up [5]** 12/15 19/17 22/8 27/13 28/25

**us [12]** 6/9 8/24 10/9 15/12 16/3 17/17 21/23 21/24 24/8 24/9 24/11 30/23

**used [1]** 17/4

**V**

**variety [1]** 23/20

**various [1]** 17/3

**versus [3]** 3/6 13/13 35/12

**very [10]** 13/4 14/15 17/13 22/1 27/14 38/10 38/14 38/21 38/23 39/11

**victim [3]** 6/16 12/22 37/9

**viewed [2]** 26/18 37/11

**vigorous [1]** 15/5

**violation [2]** 37/3 39/7

**voice [1]** 8/11

**voicemail [4]** 5/1 18/14 18/17 37/11

**volunteered [1]** 24/21

**W**

**Wait [1]** 13/11

**want [18]** 17/20 19/4 19/12 19/21 20/4 20/14 21/5 21/5 21/24 23/13 29/15 29/15 29/22 30/1 32/17 36/5 38/8 38/19

**wanted [1]** 5/16

**wants [4]** 19/15 24/8 24/9 29/12

**was [50]**

**Washington [1]** 1/14

**wasn't [2]** 36/21 38/15

**waste [3]** 19/18 36/5 40/22

**wasting [1]** 29/18

**way [3]** 4/14 5/19 25/6

**Wayte [1]** 12/16

**we [122]**

**we'd [2]** 26/23 29/18

**we'll [2]** 19/25 41/21

**we're [24]** 6/23 7/2 7/21 9/11 11/1 14/11 14/12 14/14 14/14 15/1 15/13 15/16 19/11 19/17 20/25 21/14 23/11 24/9 25/13 25/22 27/6 32/16 34/15 42/8

**We've [2]** 14/5 14/6

**wealth [1]** 34/4

**well [16]** 3/12 5/12 7/1 12/15 20/4 20/21 20/24 22/1 28/7 31/7 34/6 34/7 35/25 37/22 38/21 38/23

**went [3]** 7/12 17/3 20/13

**were [23]** 5/16 5/22 7/19 8/13 8/17 10/2 12/21 21/1 22/12 22/16 23/21 24/3 24/7 26/18 27/21 28/16 28/19 30/9 30/21 41/5 41/5 41/6 42/5

**what [41]** 5/16 5/19 6/1 8/5 11/9 12/1 12/2 12/15 13/20 14/9 15/16 17/1 17/14 17/19 18/11 18/11 20/3 20/17 21/14 22/15 23/25 27/6 27/20 27/22 28/3 28/15 29/15 33/5 33/16 33/19 34/3 34/15

## W

**what... [6]** 36/10 36/11 36/24 37/2 37/12 38/7
**what's [4]** 13/16 29/14 34/13 37/16
**Whatever [1]** 19/5
**Wheeler [3]** 1/13 3/9 25/8
**when [7]** 10/9 17/12 23/8 35/24 35/25 37/22 41/21
**where [8]** 15/1 16/11 30/21 32/16 33/13 35/13 36/2 40/6
**whether [10]** 6/7 12/9 20/22 24/25 34/12 34/14 35/3 39/1 41/14 41/15
**which [20]** 4/25 5/5 6/6 6/24 7/7 8/17 10/23 13/13 13/14 14/10 14/17 14/21 15/9 21/6 22/6 26/6 35/12 37/13 37/24 39/10
**while [2]** 10/22 25/25
**Whitley [1]** 10/23
**who [10]** 5/3 9/19 11/14 17/9 24/21 26/25 28/17 31/5 33/19 34/8
**who's [1]** 22/14
**whole [1]** 23/22
**why [9]** 7/17 31/19 32/18 33/18 34/21 35/4 35/18 35/25 35/25
**wide [2]** 27/10 27/13
**will [22]** 3/7 3/21 8/21 9/1 9/25 17/15 17/15 21/23 21/24 25/24 26/2 26/17 27/1 27/4 28/20 29/3 30/24 32/20 34/8 34/14 41/15 42/6
**withdrawing [2]** 30/7 30/11
**withdrawn [1]** 30/14
**within [6]** 12/16 21/4 22/24 23/1 34/24 40/2
**without [5]** 19/14 24/16 26/25 29/13 36/9
**witness [7]** 3/21 15/19 16/1 18/21 22/23 32/10 41/8
**witnesses [17]** 2/2 19/2 19/15 20/3 31/5

31/5 31/16 32/4 32/9 32/14 32/19 33/18 33/19 34/8 34/8 40/15 40/21
**won't [2]** 17/20 22/4
**Woomer [1]** 31/10
**word [1]** 10/9
**work [2]** 7/5 24/6
**working [2]** 6/4 6/6
**would [47]**
**wouldn't [3]** 14/10 17/16 24/23
**wrong [1]** 28/23

## Y

**Yeah [1]** 32/17
**year [2]** 4/24 26/6
**years [2]** 16/14 16/17
**yes [27]** 11/5 15/20 16/20 16/25 17/8 18/5 18/7 18/10 20/18 21/1 21/11 22/22 24/19 25/3 27/3 27/4 28/8 30/5 30/13 30/17 31/9 31/14 31/25 32/21 34/18 38/3 39/21
**yet [2]** 13/18 15/1
**York [20]** 5/8 5/10 5/20 5/21 7/25 8/8 8/14 8/23 9/1 10/3 10/3 10/12 10/14 16/24 18/3 21/22 27/17 28/1 28/13 28/25
**you [84]**
**you'll [2]** 14/19 36/11
**you're [6]** 19/21 20/3 21/7 22/19 22/20 30/7
**your [70]**
**yourself [1]** 20/15

## Z

**Zoom [8]** 31/7 31/8 31/9 31/10 31/10 31/16 36/6 42/8