UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>23-cr-80064-RS</u>

UNITED STATES OF AMERICA

v.

FRANK STANZIONE,

      Defendant.

_____/

<u>GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF A
SENTENCE WITHIN THE ADVISORY GUIDELINE RANGE</u>

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits its *Memorandum of Law in Support of a Sentence Within the Advisory Guideline Range.* For the reasons set forth herein, a sentence within the advisory guideline range is sufficient, but not greater than necessary, to achieve the goals of sentencing.[1] In support thereof, the government states the following:

---

[1] The Probation Department has submitted a draft of the Pre-Sentence Investigation Report (hereinafter "Draft PSI"). The Draft PSI computes the advisory guideline range at 10 to 16 months. Undersigned counsel has notified the probation officer that the guideline range failed to include a 6-level victim related adjustment, pursuant to *U.S.S.G.* §3A1.2(b), because the victims in the instant case were a government officer or employee and immediate family member. The Probation Officer has informed undersigned counsel that he agrees that the 6-level enhancement applies. He indicated that he will correct the guideline calculations in the addendum to the PSI. **With this change, the advisory guideline range will be 27 to 33 months' imprisonment.** Undersigned counsel has informed defense counsel of the upcoming change. To date, the defendant has not filed an objection to the revised guideline calculations.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 29, 2023, at approximately 10:24 p.m. Eastern Time, an anonymous caller left the following voice message on the telephone line for the office of United States Representative George Santos:

> George Santos you fat fucking piece of shit f*****. You better watch your mother fucking back because I'm gonna bash your mother fucking f***** head in with a bat until your brains are splattered across the fucking wall. You lying, disgusting, disgraceful, motherfucking f*****. You mother fucking piece of shit. You're gonna get fucking murdered you goddamn lying piece of garbage. Watch your back you fat, ugly, piece of shit. You and your husband are dead.

The message was reported to the United States Capitol Police (USCP) the next morning by Representative Santos' chief of staff.  The USCP began investigating the voice message as a threat and ascertained that it was made from a phone number assigned to the Defendant, Frank Stanzione (hereinafter "Defendant").

On January 31, 2023, USCP Special Agents went to the address associated with the telephone number and interviewed Defendant.  When interviewed, Defendant admitted to making the threat and that he had searched for the phone number through an online search engine.  At that point, the USCP was concerned with determining how likely it was that Defendant would follow through with the threat and asked him about his intentions, travel plans, and whether he had made similar calls to other Members of Congress.  Defendant stated that he had made calls to two other Republican Representatives but indicated that he had not threatened them.  Specifically, he stated, "I've never threatened to hurt anyone until Sunday night" (referencing the threat to Representative Santos).

At trial, Defendant elected not to testify.  His attorney argued that his threat was not a "true threat" largely because it was one threat that was lasted approximately one-half minute long and

there was no evidence that he intended to carry it out.  The jury rejected his arguments and found him guilty as charged.  Sentencing has been scheduled for May 2, 2024.

The United States Probation Office conducted a thorough Presentence Investigation Report (hereinafter "PSI").  Defendant's base offense level begins at 12.  (ECF 125, *U.S.S.G.* § 2A6.1). The Probation Office informed undersigned counsel that he will file an addendum to the PSI which will include a six-level increase for threatening a government employee for a total offense level of 18. *See* Footnote 1.

Defendant has been convicted of crimes three times since age 30.  In 2001, he plead guilty to assault and battery on a public employee and resisting arrest (PSI, ¶ 23).  According to the criminal complaint, Stanzione assaulted and beat two police officers who were engaged in the performance of their duties. *Id.*  He was sentenced to six months' probation. *Id.*  In 2008, he pled no contest to driving while under the influence of alcohol (PSI, ¶ 23).  He was sentenced to five years' probation. Id.  In 2010, he pled guilty to using the personal identifying information of another. (PSI, ¶ 26).  He was sentenced to three years' probation with 12 days jail credit. *Id.*  In 2015, the court granted his petition for dismissal.  The prior conviction was set aside, a not guilty plea was entered, and the charge was dismissed. *Id.*

Due to the age of the prior convictions, none of them qualified for criminal history points under the Sentencing Guidelines.  Thus, despite multiple criminal infractions, Stanzione received zero criminal history points and qualified as a Criminal History Category I.  His advisory guideline range is 27 to 33 months' imprisonment.  *See* Footnote 1.  Based on the Section 3553(a) factors, the United States believes that a sentence at the low end of the advisory guidelines is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## LEGAL ANALYSIS AND RECOMMENDATION

I.    **Generally Applicable Legal Principles**

When determining the appropriate sentence, the district court should consider all applicable factors set forth in 18 U.S.C. § 3553(a).  *See United States v. Gall*, 128 S. Ct. 586, 596 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for –

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

        (i)    issued by the Sentencing Commission ...; and;

        (ii)    that, . . . are in effect on the date the defendant is sentenced; ...

(5)    any pertinent policy statement –

    (A)    issued by the Sentencing Commission ... and

    (B)    that, . . . is in effect on the date the defendant is sentenced.

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

II.      **Section 3553 Analysis**

A review of the sentencing factors set forth in Section 3553 indicates that a sentence within the advisory guideline range is sufficient, but not greater than necessary, to achieve the goals of sentencing.  Defendant threatened to kill a member of the United States House of Representatives. "[T]hreats of violence and death on law enforcement officers who serve and protect the community … clearly cannot be permitted. Not in the world in which we live today." *United States v. Killingsworth*, Case No. 20-cr-00158-JRA (N.D. OH, at Docket Entry 48:17).  Thus, the nature and circumstances of the offense strongly support a guideline sentence.  Moreover, a guideline sentence would accurately reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

A.      **The Nature and Circumstances of the Offense**

Approximately 16 months ago, Defendant left a voicemail message at the office of Congressman George Santos threatening to kill the Congressman and his husband.  His threat was clear, direct, and explicit – he threated to "bash his [expletive] head in with a baseball bat until his brains are splattered on the [expletive] wall."  He promised that the Congressman would be "murdered" and declared that he and his husband are "dead."

Threats of these kind are serious because of the widespread harm that it causes.  To the victims, threats of violence cause substantial mental, emotional, and psychological injury.  Here, Stanzione's threats to kill certainly placed the Congressman in fear of serious bodily injury or death.  The Congressmen knew nothing about the identity of the person who threatened to kill him. Thus, he had no idea if Stanzione knew where he lived or had any plans to carry out his threat.  By

making an anonymous threat to kill, Stanzione accomplished his intended goal – to instill fear in the Congressman.  The pain and anguish that accompanied that fear is real.

In addition to the individualized harm, Stanzione's threat did real harm to our democracy. The defendant chose his victim based solely on the Congressman's employment as a member of Congress.  Threats against members of Congress have been on the rise for years.  In 2023, the United States Capitol Police investigated 8,008 direct threats and "concerning statements" leveled against members of Congress. S*ee* https://www.uscp.gov/media-center/press-releases/uscp-threat-assessment-cases-2023#:~:text=The%20number%20of%20United%20 States,concerning%20statements%20and%20direct%20threats.  Although down from a record high of 9,625 cases in 2021, the 2023 total was a 103% increase from 2017 which saw approximately 3,939 cases. *Id.*  As a result, the number of federal arrests for threats to public officials have also increased substantially.  In 2013, 38 arrests were made - in 2022, there were 74.[2]

State legislators have also been the victim of increasing number of threats.  According to a report published in January 2024 by the Brennan Center for Justice, more than 40% of state legislators surveyed reported being threatened or attacked in the past three years.  *See* time.com/6565184/violent-threats-public-officials/.  Nearly 90% said they had suffered severe abuse, including harassment, intimidation, and stalking. *Id.* Almost 40% of the local officials said the ongoing harassment made them less willing to run for re-election or to seek higher office. *Id.*

Threats like those made by Stanzione damages our democracy because it causes elected leaders to fear for their lives and for the safety of their families.  Such threats undermine the rule

---

[2] According to Seamus Hughes, a senior researcher at the National Counterterrorism Innovation, Technology and Education Center located at the University of Nebraska, Omaha, who tracked the number of arrests over threats to public officials over the last decade.

of law and creates conditions of fear and intimidation for public officials and government workers. This fear often discourages highly qualified elected leaders from continuing to participate in the democratic process. It also tends to reshape the way public officials do their job. Many elected officials who have been threatened are less likely to engage with constituents, hold public events, or advocate for policies that could lead to blowback. *Id.*; *See also* https://www.axios.com/2024/01/19/threats-members-congress-2023 ("As a record number of lawmakers in both parties account plans to retire from Congress, [House Administration Committee Ranking Member Joe] Morelle suggested the rising threats public officials face should not be discounted as a factor").

Since the date of Stanzione's threat made less than 16 months ago, threats against public officials have continued to rise. In December 2023, Deputy Attorney General Lisa Monaco reported during an interview on ABC's "This Week" that the Justice Department stated the following:

> On a weekly basis – sometimes more often – I am getting reports about threats to public officials, threats to our prosecutors, threats to law enforcement agents who work in the Justice Department, threats to judges … In fact, just this week, … we've had cases involving threats to kill FBI agents, a Supreme Court justice and three presidential candidates. That's just this week."

See https://www.politico.com/news/2023/12/24/death-threats-public-officials-trump-00133167.

### 1. Trial Cases Involving 875(c) Convictions

In the face of rising threats, courts in this circuit and others have imposed severe prison terms for defendants convicted of committing 875(c) threats, especially those defendants convicted after trial for threatening elected leaders and government employees. Like the instant matter, many of those cases involved only one or a few threats. For example, in *United States v. Kaye*, 21-80039-cr-RLR(s), the defendant threatened to kill FBI agents shortly after they contacted her by

phone and requested that they meet to discuss whether she was at the Capitol on January 6, 2021, and whether she knew other persons who were there.  After agreeing to meet, she posted a 45-second video on social media informing her "Facebook friends" that the FBI wanted to speak to her being at the Capitol on January 6.  She announced that she would not speak to them and proclaimed that she would "exercise her Second Amendment rights to shoot [the agent's] f******* ass if you come here."  She posted a second video minutes later with substantially the same content on another social media platform. *Id.*

Like *Stanzione*, Kaye was convicted at trial. *Id.*  With a Criminal History Category I, her advisory guideline range was 27 to 33 months' imprisonment. *Id.*  At sentencing, Judge Rosenberg described Kaye's threat against a public servant "who work each day to keep us safe, [as] serious... Incarceration is typical in sentencings for interstate transmission of a threat to injure based on the totality of cases the Court has reviewed." *Id.* at 196-197.

Judge Rosenberg also recognized:

Incarceration was also imposed in cases involving just one threat. For example, in United States versus Howard, the case that the Government submitted to this Court, Defendant Howard left one voice mail for Attorney General Eric Holder. In that voice message, he threatened to kill Attorney General Holder. In that case the sentencing Court sentenced Howard to 30 months in prison. In another case, United States versus Nicholas, Defendant Nicholas sent a total of four letters to the Inspector General. In one of the letters, he threatened to kill FBI agents. The sentencing Court in that case sentenced Defendant Nicholas to 45 months.

*Id.* at 197.  While there is no evidence that a victim was personally harmed by Kaye, "that is not a reason not to treat Ms. Kaye's threat seriously as it is a serious crime, but instead, it is a factor that the Court takes into consideration when imposing a sentence." *Id.*  After considering all sentencing factors pursuant to 18 U.S.C. 3553(a), including Kaye's significant history of seizures, the court sentenced her to 18 months' imprisonment (33% variance).

In *United States v. Howard*, 947 F.3d 936 (6th Cir. 2020), the defendant left a single

voicemail message in 2017 for former Attorney General Eric Holder at his law firm.  In the message, the defendant claimed to have been convicted in court previously in violation of the Double Jeopardy Clause of the United States Constitution.  He then threatened to kill the former Attorney General.  After being convicted at trial, the court sentenced him 30 months in prison.

In *United States v. Dierks*, 978 F.3d 585 (8th Cir. 2019), the defendant sent three threatening tweets to Senator Joni Ernst of Iowa. *Id.* at 588.  In the tweets, the defendant threatened to "fu up seriously in my sleep," and "I'll beat ur ass in front of ur window, I promise that." *Id.*  After being visited by law enforcement and requested to tone down the rhetoric, the defendant made several additional uncharged tweets wherein he continued to threaten the Senator. *Id.* at 589.  Defendant was convicted at trial.  At sentencing, the court described the nature and circumstances of the offense as follows:

> In this day and age, threats and rants by people like Mr. Dierks have to be taken seriously. As we know, some individuals who behave this way, threatening others, do end up inflicting injury and death on others, and the Court takes defendant at his word. If a person makes threats, they should know that the recipients take those threats seriously. Because of the seriousness of this crime, a just punishment, a serious time in prison, is necessary.

*United States v. Dierks*, Case No. 17-cr-2065 (N.D. IA, at Docket Entry 97:59).  Due to the substantial number of threats and the victim being a high-ranking government official, the court imposed an upward variance from the advisory guideline range of 41 to 51 months and sentenced Dierks to 72 months imprisonment.

In *United States v. Fratus*, 2021 WL 3145732 at *1, (E.D. Pa., July 26, 2021), the defendant sent two threatening emails from his i-Phone in Massachusetts against the Philadelphia Police Commissioner.  In the emails, the defendant used racial expletives, called for hanging, and for "Jews into the ovens!!!" *Id.*  At sentencing, the court described the defendant's offense as "disgusting, offensive, destructive and inexcusable on every level ... And there's no place or room

9

for what Mr. Fratus has done in any society much less a civilized one." *Fratus*, Case No. 20-00270-cr-GJP, (E.D. Pa, at DE 98:108).  The court then imposed an upward variance from the advisory guideline range of 31-37 months and sentenced him to 48 months in prison.[3]

Finally, in *United States v. Pratersch*, 808 Fed. Appx. 768 (11th Cir. 2020) (unpublished), the defendant was convicted after trial of making threatening phone calls to the office of Senator Bernard Sanders from Vermont.  At sentencing, the court found that the defendant's threats were serious:

> I remember when I was a kid the civics teachers used to tell us, I disagree with you with every fiber of my being, but I will fight to the death to protect your right to say it. And I think that's being damaged by things like this. So I take it very seriously. And although I take you at face value you weren't going to fly up there and do anything. Maybe you didn't have the wherewithal to do it. But when you make that phone call, everything gets turned on its head. You have all of these federal law enforcement agencies that have to make take it seriously. They have to investigate it. They have to come down and talk to you. They have to begin a federal prosecution and do all of these things.

*United States v. Pratersch*, Case No. 19-cr-0026-CEM-T, at Docket Entry 87:13-14.  With the defendant having a Criminal History Category I, the court sentenced him at the low end of the advisory guidelines and imposed a sentence of 15 months' imprisonment. *Id.* at 15.  The court explained that it imposed a sentence within the advisory guidelines partly because the defendant did not accept responsibility for his crimes. *Id.* at 14.

## 2.   Guilty Plea Cases Involving 875(c) Threats

Even in cases resulting in a guilty plea, courts around the country have imposed prison terms as sufficient but not greater than necessary punishment to achieve the goals of sentencing.  Most recently, in *United States v. Russell*, 22-01661-PHX-SPL (D.C. Az., March 26, 2024), the

---

[3]  Fratus's criminal history included prior assaultive behavior, including assault on law enforcement, threats to a Congresswoman, threats to an Islamic Center and Palestinian Businessman and an attack on homeless people.

defendant sent three voicemail messages for an election official with the Arizona Secretary of State's Office, in which he accused the public official of committing election fraud and threatened her life.  Despite accepting responsibility for his crimes, the Court sentenced him to 30 months' imprisonment.  *Id.*

In *United States v. Comiskey*, Case No. 22-cr-80084 (S.D. FL.), the defendant was charged with making five threats on social media against Congresswoman Lauren Boebert, in violation of 18 U.S.C. § 875(c) (*Id.* at Docket Entry 3).  Comiskey pleaded guilty to making only one threat and the government dismissed the remaining four counts. The threat of conviction posted on Twitter read, "lf I ever saw Lauren I'd be glad to take her out and go to prison. Would be job well done."  With a Criminal History Category of I, the court sentenced him within the advisory guideline range and imposed a term of 15 months' imprisonment. *Id.*

In *United States v. Joshua Hall*, 21-cr-00605-GHW (S.D. N.Y.), defendant placed a series of telephone calls on August 29, 2022, to the California office of a member of Congress and threatened to kill the Congressman to at least three different staff members.  At sentencing, Court computed Hall's advisory guideline range to be 27 to 33 months' imprisonment. *Id.*  Court imposed a sentence of 20 months. *Id.* at DE 64.

In *United States v. Killingsworth*, 2020 WL 4703090 at *1 (N.D. OH., August 12, 2020), the defendant posted two threats against his local police department.  In a Facebook post, the defendant stated, "I think a cop needs killed around here again." *Id.*  On the police department's Facebook page, the defendant repeated the threat. *Id.*  He also wrote, "More cops need shot dead. *Id.*  They kill us, we kill them," as well as comments against specific individuals such as "Your kids need shot in front of you", "F you and your kids, you won that price", and "I'll see you in the woods." *Id.*  The court sentenced Killingsworth to the high end of the advisory guidelines range

of 30 months in prison.

In *United States v. Rana*, 773 Fed. Appx. 218 (5th Cir. 2019), defendant called the office of United States Congressman Clay Higgins via telephone and threatened to kill him.  The Court imposed a sentence within the advisory guideline range of 30 months' imprisonment.

In *United States v. Hoff*, 767 Fed. Appx. 614 (6th Cir. 2019), the defendant left three voice messages at the office of United States Representative Steve Stivers that gave the Congressman concern for his safety and his family. *Id.* at 616. Congressman Stivers contacted the Capitol Police to investigate the calls. *Id.* During the investigation, an investigating agent warned Hoff not to contact Congressman Stivers's office again. *Id.* Nevertheless, Hoff left two additional voice messages four days after a shooting at a baseball practice in Washington D.C. where Republican congressmen and their staffs were fired upon. *Id.* In the messages, Hoff stated, "I think y'all better hit your knees and pray for the people that you're screwin' up their lives with your secret legislation....," and "We are taking our country back. We are on the march. The other day is the tip of the iceberg. I've tried to warn you.... Maybe the next one taken down will be your daughter, huh? Or even your wife. Or even you." *Id.*  The court sentenced Hoff to 40 months imprisonment. *Id.* at 617.

Consistent with these cases, Stanzione's crime was serious, especially since the target of his threat was an elected member of the House of Representatives.  A sentence of incarceration is needed to accurately reflect the seriousness of the offense.  Conversely, a sentence of probation would send a message that death threats against public officials in government are not treated seriously.

In his Sentencing Memorandum (Doc. 134), Stanzione cites to numerous cases that are distinguishable from the instant matter.  Much of his attention is focused on Florida law and cases

involving other statutes or crimes, such as assault or trespass. *Id*.  For the ten cases involving prosecutions under 18 U.S.C. 875(c) that he cites, seven of them ended in a guilty plea, one case ended in a hung jury, one case is pending, and only one case involved a defendant who was convicted after a contested trial. That defendant, Carlos Bayon, "was sentenced above Guidelines range to 60--months imprisonment." *Id*. at 18-19.

Stanzione has also argued that there is no evidence that he intended to carry out his threat. While true, this fact provides little mitigation to his crime.  First, the Congressman was never aware of his intent to carry out his threat.  To him, Stanzione's actual intent in no way assuaged his fear.  Second, the harm contemplated by the statute of conviction came to fruition – the victim was frightened of death.  The fact that other harms did not come to pass, such as carrying out the threat by killing the Congressman, does not excuse or lessen the severity of the threat itself.

While our vibrant democracy allows a wide array of speech, including vile, vulgar, offensive, and unpopular speech, it cannot tolerate criminal threats.  Speech that crosses that line must be treated seriously to protect safety of the victim and the sanctity of our democracy.  A prison sentence certainly would achieve that goal.

### B.     The History and Characteristics of the Defendant

Although Defendant admitted to agents shortly after his crime that he sent the threatening message to the Congressman and called the Congressman to apologize, he has not truly accepted responsibility for his crime.  In lieu of taking full responsibility by pleading guilty to the charge, Defendant went to trial.  His attorney argued that despite Defendant's direct threat to "bash" the Congressman's head in with a baseball ball until his brains are splattered on the wall, he argued that Defendant's threat was not a "true threat."  Thus, Defendant disputed an essential element of the crime charged.

A defendant who disputes an essential element of the crime charged has not accepted responsibility for his crime.  *See U.S.S.G.* § 3E1.1, comment. (n.2), which provides that the Guidelines' two-level reduction for acceptance of responsibility  "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse;"  *Joiner v. United States*, 103 F.3d 961, 964 (11th Cir. 1997) (emphasis added)  (a defendant who "forces the government to trial is *rarely* entitled to an adjustment for responsibility).   One recognized exception is "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt," for instance, by raising a constitutional challenge to a statute.  *U.S.S.G.* § 3E1.1, comment. (n.2).  Without question, such is not the case here.

Defendant's criminal history is also concerning because it involves a serious act of violence.  In 2001, he plead guilty to assault and battery on a public employee and resisting arrest (PSI, ¶ 23).  According to the criminal complaint, Stanzione assaulted and beat two police officers who were engaged in the performance of their duties.  *Id.*  He was sentenced to six months' probation.  *Id.*  In 2008, the defendant pled no contest to driving while under the influence of alcohol (PSI, ¶ 23).  He was sentenced to five years' probation. Id.  In 2010, Stanzione pled guilty to using the personal identifying information of another. (PSI, ¶ 26).  He was sentenced to three years' probation with 12 days jail credit. *Id.*  His conviction was later set aside and the charges dismissed. *Id.*

Thus, despite having a criminal history, Stanzione received a Criminal History Category I because his criminal infractions spanning two decades were too old to score.  Nonetheless, these incidents demonstrate a concerning history of harmful conduct and bad judgment.  Consistent with his history, Defendant engaged in harmful conduct in the instant matter.  Thus, the instant matter

was not an aberrational event by an otherwise law-abiding person. To the contrary, it was a violent crime by a person who has run afoul of the law in the past. The instant matter is consistent with the defendant's display of poor character and poor judgment. This history weighs heavily in favor of a guideline sentence.

### C.     Need for the Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense.

In sentencing the defendant, the court must consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2). As explained above, Stanzione threatened to kill the Congressman because of his role as an elected official. Clearly, he made the threat because he wanted to instill fear in his victim. A threat to kill an elected official is a very serious offense. To ensure the integrity of our democracy, every elected everywhere must assured that they are able to do their jobs without fear of physical violence from those who are disgruntled. The rule of law demands nothing less. A 27-month prison sentence is needed here to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

### D.     Afford Adequate Deterrence to Criminal Conduct.

In the past several years, we as a nation have become increasingly polarized along political and ideological lines. Passionate speech, even unpopular or provocative language, is healthy to a vibrant democracy where people's voices contribute to the marketplace of ideas. However, criminal threats serve no useful purpose. As such, the consequences for such criminal behavior should be severe to deter people from engaging in such behavior. As stated above, threats to kill our elected leaders, and prosecutions for those threats, have increased significantly over the past few years. *See*, *e.g.*, *United States v. Michael Shapiro*, 24-cr-80007-DMM (S.D. Fla) (defendant allegedly called the office of a United States Congressman on December 19, 2023, and said that

he was "going to come after you and kill you" and that he was "going to come after you and kill your children); *United States v. Sean Patrick Cirillo, 23-cr-00365-VMC-JKL* (N.D. Ga.) (defendant allegedly called United States Congresswoman's office on November 8, 2023, and threatened violence against her, her staff, and their families – "I'm going to kill her next week. I'm going to murder her. I'm gonna shoot her in the [expletive] head, okay?"); *United States v. Ingalls, Jr.*, 23-mj-00083-DFB (on November 6, 2023, defendant left two voicemail messages on the main congressional office answering system in Washington, D.C. threatening to kill the same United States Congressman); *United States v. Brian Landry*, 23-cr-00073-SE-AJ (D.N.H.) (defendant allegedly called district field office of a United States Senator and left a voicemail message on May 17, 2023, that stated, in part, "You're a dead man walking, you piece of f***ing sh**").[4]

The need to deter is particularly strong here when the target of the threat is a member of the House of Representatives who needs to serve his constituents without fear of physical harm from those who disagree with him.  *See*, *e.g.*, *United States v. Voneida*, 2008 WL 189667 at 3 (E.D.PA., January 18, 2008) (the court recognized that the effect of a "true threat" upon institutions required to take seriously even joking threats, however, is one of the evils that a statute like § 875(c) attempts to deter); *United States v. Feeney*, 2022 WL 580955 at *4 (E.D.N.Y., February 25, 2022) (court stated that a sentence at the high end of the guidelines for transmitting a threat in interstate commerce in violation of § 875(c) recognizes the seriousness of the Defendant's conduct and provides for both specific and general deterrence); *United States v. Pratersch*, 808 Fed.Appx. 768, 771 (court cited need to deter the defendant and others among basis for imposing 15-month jail sentence for threatening officials based on their political viewpoint).

Threats against political leaders are assaults against our democracy.  Violent rhetoric must

---

[4] All cases listed in this paragraph are currently pending trial.

never be tolerated in a civilized democracy where the safety of members of our democratic institutions must be sacrosanct.  To clearly delineate the line between acceptable and unacceptable speech, our courts should send a clear message that violent speech will not be tolerated.  A sentencing within the advisory guideline range will send that clear message.  Conversely, a light sentence would send the wrong message to this defendant and others.  In effect, it would tell offenders like the defendant that such speech carries with it little to no consequences.  That message would undermine the seriousness of the conduct and do little to prevent it from re-occurring.

###### E.      Conclusion

Based on the sentencing factors of 18 U.S.C. 3553, the government respectfully requests this court impose a sentence within the advisory guideline range, followed by three years of supervised release.  This sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing.  The factors that support this recommendation include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and to afford adequate deterrence to the criminal conduct.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:      */s/ Mark Dispoto*
Mark Dispoto
Assistant United States Attorney
Court Id. No A5501143
500 South Australian Avenue
West Palm Beach, Florida 33401
Tel: (561) 209-1032
Mark.dispoto@usdoj.gov

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2024, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.


/s/ Mark Dispoto
Mark Dispoto